BOARD OF WATER COMMISSIONERS OF DETROIT *v.* COMMISSIONERS OF PARKS AND BOULEVARDS.

1. MUNICIPAL CORPORATIONS—WATER RATES—PUBLIC PARKS.

The board of water commissioners of the city of Detroit is not bound, under the statute, to furnish water free of charge for the parks and public grounds under the management and control of the commissioners of parks and boulevards of said city. MOORE, J., and MONTGOMERY, C. J., dissenting.

2. SAME—MANDAMUS—DEFENSES—LACK OF FUNDS.

However, on application for *mandamus* to compel the park board to audit the claim of the water board for water supplied, HOOKER, J., concurred with the above-named Justices in denying the writ, on the ground that no appropriation for that purpose had been made by the common council, and the park board is forbidden by the statute to incur any obligation not so authorized; GRANT and LONG, JJ., favoring the issue of the writ.

*Certiorari* to Wayne; Hosmer, J.   Submitted October 12, 1900.   Decided May 7, 1901.

*Mandamus* by the board of water commissioners of the city of Detroit to compel the commissioners of parks and boulevards to audit relator's account for water furnished. From an order denying the writ, relator brings *certiorari*. Affirmed.

*Gray & Gray*, for relator.

*Timothy E. Tarsney*, for respondents.

GRANT, J.   The main question in this case is, Must the board of water commissioners of the city of Detroit furnish water for the public parks of the city without charge? The relator is a corporation organized under Act No. 90, Laws 1853.   By the terms of the act, the possession and control of the waterworks are vested in the relator.   It is vested with the sole power to assess the water rate to be paid by the owner or occupant of each house or other building having or using water.   It is also authorized to purchase such land and materials, and to construct such reservoirs, etc., "as shall be deemed necessary or desirable to furnish a full supply of water for public and private use in said city."   It is also required to invest any surplus, not required for the payment of running expenses or the extension of its works, so as to make the same available for the payment of interest and principal of the bonds issued in pursuance of the act.   It is also vested with power "to construct reservoirs, jets, and fire hydrants at such localities in said city as they may deem expedient and necessary, and to lay pipes in and through all the alleys and streets of said city; and also to construct in such localities as they may deem expedient, not exceeding one to each block, hydrants for public use, and to keep the same in repair; and also, with the consent of the common council of said city, to construct fountains in the public squares, or such other public grounds of said city as they shall deem expedient."

The theory of the act seems to be that it is to be maintained by the consumers of water. It was not contemplated that it should be supported by a tax upon the city. There is nothing in the act to indicate that it was the intention of the legislature to require water to be furnished to the public parks, buildings, etc., in the city, free. It is manifest, therefore, that, if the contention of the respondent be maintained, the cost of water furnished to the parks and for other public purposes will not be paid by a tax upon the inhabitants of the city, but must be paid by the consumers of water. These water rates are not taxes. *Jones* v. *Board of Water Com'rs of Detroit*, 34 Mich. 273; *Preston* v. *Same*, 117 Mich. 589 (76 N. W. 92). If a private corporation had been authorized to supply the city and its inhabitants with water for public and private use, and in granting the franchise the city made no provision that water should be furnished free for public uses, it would hardly be contended that such corporation could be compelled to furnish it free for those purposes. The relator was evidently established in the interests of economy, and for that reason the exclusive power was vested in a board consisting of five persons.

The fact that the legislature, by Act No. 302, Laws 1873, authorized an annual levy of a tax of $75,000, to be used in payment of interest upon the bonds issued by said board, does not detract from or add to the powers of the board under its act of incorporation. It in no manner affects the right of the board to fix the water rates, or implies that water must be furnished free for public purposes. We are therefore of the opinion that relator is empowered to charge reasonable rates for water furnished for public purposes, and that the legislature alone possesses the power to exempt the city from the payment of water rates.

It is also urged as a defense that the board of estimates made no provision for raising the money, and that therefore there are no funds out of which to pay. We think this defense is not available. The prayer of the petition is

that the respondents audit the account. The respondents are not the custodians of the moneys. By Act No. 380, Local Acts 1897, the bills must be audited by the respondents, after which they are delivered to the controller, who is authorized to submit the same to the council with his approval or disapproval. Should the authorities whose duty it is to pay refuse to pay after the bill is audited, this question might arise. We presume, however, there will be no difficulty, inasmuch as the main object of this suit was to settle the power of the relator.

The writ should issue.

LONG, J., concurred with GRANT, J.

MOORE, J. I cannot agree with the conclusion reached by Mr. Justice GRANT. Section 2 of the act approved March 8, 1873, being section 540 of the laws relating to the city of Detroit, requires the common council to include in the general tax, annually, the sum of $75,000, to be paid over to the water board, to be used in the payment of the interest, so far as may be necessary, on any outstanding bonds issued for the purposes of the board; the balance to go into a sinking fund, to be used in paying the bonds when they mature. Section 528 of the laws relating to the city requires the council to assess on all the taxable property of the city such sums as the board of water commissioners need, over and above the revenue of the board, to meet the payment of the principal and interest of the bonds issued.

It is shown in *Preston* v. *Board of Water Com'rs of Detroit*, 117 Mich. 589 (76 N. W. 92), that from 1882 to 1895, inclusive, there was received from water rates $4,952,959.30, while there was paid by the city during the same time $1,036,532.81 of money raised upon all the taxable property of the city. It was also shown that the water used by the fire department, the park commissioners, and for all other purposes which may be called water used for public purposes, was only 4 per cent. of the pumpage of the waterworks. The city, then, has paid, by tax

levied on all the taxable property of the city, upwards of 18 per cent. of the entire receipts of the water board, while it has used only about 4 per cent. of the pumpage.

Section 430 of the laws relating to the city of Detroit requires the park and boulevard commissioners, annually, to submit to the common council an estimate of the needs of the board for the ensuing year, which estimate shall specify the sums desired for each of the several objects of expenditure. The following section provides for the raising of this money by a general tax, and that, when raised, it shall be paid out only for the purposes approved by the common council and board of estimates. By the next section, the commissioners are forbidden to incur any liability during any fiscal year in excess of the money in any fund, or not authorized by the common council.

By section 511 of the laws relating to the city of Detroit, it is made the duty of the board of water commissioners, when the necessary funds are supplied, to make such provision as shall be necessary to furnish a full supply of water for public and private use. The following section requires the board to provide fire hydrants at such localities as may be ordered by the fire commission or the common council; the expense thereof to be paid from the funds of the fire commission, when ordered by it, and from the appropriate fund of the city, when ordered by the common council. It also provides that the board may erect drinking hydrants for public use in each block of said city, and, with the consent of the common council, may erect fountains in such public grounds of the city as they may deem expedient.

It will be observed, the erection of fountains is impossible, either by the board of park commissioners or the board of water commissioners, without the consent of the common council. The erection of fire hydrants is impossible except by the consent of the fire commission (whose funds must be provided by general tax) or by the common council. It is also clear that fire hydrants, without an adequate supply of water, would be of little use, while

drinking hydrants and fountains would be such only in name unless supplied with water.

The provision for the assessment of water rates by the board is found in section 513 of the laws relating to the city of Detroit. It reads as follows:

"Said commissioners shall, from time to time, cause to be assessed the water rate to be paid by the owner or occupant of each house or other building having or using water, upon such basis as they shall deem equitable; and such water rate shall become a continuing lien, until paid, upon such house or other building, and upon the lot or lots upon which such house or other building is situated."

It will be observed that authority is nowhere given to assess the fire department, or the board of park commissioners, or the city of Detroit for water used by these various departments. In view of the fact that the city is paying for the water used by its various departments three or four times as much as is paid by the ordinary consumer, this failure to confer authority upon the water board is very significant.

Section 428 provides that the commissioners of parks and boulevards shall have the control and management, and shall have charge of the improvement and maintenance, of all the parks and public grounds of said city, including Belle Isle Park, and shall have control of the improvement and maintenance of the boulevards. The commissioners, then, having the right, in the improvement of the parks and boulevards, to erect fountains, when the funds are raised by the board of estimates and the common council, it would seem to follow, by implication, that the water necessary to be used to supply these fountains should not be made a charge against the park and boulevard commission. The property under the control of these boards is the property of the city of Detroit. The boards are part of the municipal machinery, called into being for the purpose of managing the several departments placed under their control, not for their own benefit, but for the benefit of the city of Detroit and its citizens.

I think the writ should be denied.

MONTGOMERY, C. J., concurred with MOORE, J.

HOOKER, J.  I am unable to find in the water-board act any provision that makes the furnishing of water free for drinking hydrants or fountains, except when they are erected by the water board under the terms of said act. The park board may doubtless erect fountains, under the provisions of the park-board act, without the concurrence of the water board; but it is nowhere made the duty of the water board to supply them without compensation.  The act providing for a board of park commissioners contains no implication that such board may impose the expense of improving or maintaining the parks upon any other board or department of the city government, but, on the contrary, contemplates that provision for such expenditures shall be made by general tax, and the board is limited to such expenditures as the council may authorize.

The board of water commissioners is not under obligation to furnish water without pay.  The park board is prohibited from incurring obligations beyond the amount appropriated for specific purposes.  It does not appear that an appropriation has ever been made for water, or that any such item has ever been allowed or paid.  On the contrary, the council has refused such appropriations, upon the claim that it is the water commissioners' duty to furnish the water without charge.

The writ should be denied.