HILL et al. v. CITY OF ST. LOUIS et al., Appellants.

159    159
d89a  647
89a   648

In Banc, December 18, 1900.

1. **Sewer: CONNECTIONS: ENJOINING PERMITS.** It is lawful and proper for the sewer commissioner in St. Louis to withhold permits to citizens within the sewer district to connect with such district sewer, until they have paid the special tax bills due the contractors who built said sewer, since there is an ordinance that says no such permit shall be issued until such payment is made, and such ordinance is, under a charter that gives the city authority to construct and regulate the use of sewers, a valid enactment. And such contractors can maintain suit by injunction against such city and its sewer commissioner to restrain them from issuing such permits until such tax bills are paid. (Overruling State ex rel. Peck v. Hermann, 84 Mo. App. 1.)

2. ———: ———: ———: **EXCLUSIVE REMEDY.** The contractor has two remedies. The charter provides that the cost of constructing a district sewer shall be assessed as a special tax against the property in the district, and that the contractor must receive tax bills for his pay, and that such tax bills shall be a lien on the property and may be enforced by suit. But that remedy is not exclusive. The city can pass an ordinance forbidding the issuance of any permit to connect with the sewer until the tax bill is paid, and the contractor has the right, under such ordinance, to enjoin the city from issuing such permits until the tax bills are paid. The city has the power to pass such ordinance under the section of its charter which gives its municipal assembly power, by ordinance, "to construct and keep in repair all . . . . . sewers . . . . . and to regulate the use thereof."

3. ———: ORDINANCE: REASONABLE REGULATION. Such ordinance is not invalid as being an unreasonable regulation. It is a valid, reasonable and proper regulation.

4. ———: ORDINANCE: POWER "TO REGULATE USE." The power "to regulate the use" of a sewer by ordinance, means the power to fix the terms upon which the sewer may be used.

5. ———: ———: WATER-CLOSET: NUISANCE. Nor is such ordinance invalid because another ordinance requires water-closets in the sewer district to be connected by drains with the sewer, and a failure to do so is a nuisance. The property owner can pay the tax bill and have his water-closet, or he can refuse to pay it and do without the water-closet until the validity of the tax bill is determined in court.

Appeal from St. Louis City Circuit Court.—*Hon. Jno. A. Talty,* Judge.

AFFIRMED.

*Schnurmacher & Allen* for appellants.

(1) The city of St. Louis has express charter power to establish a general sewer system, to construct sewers, and to regulate the use of the same. Charter, art. 6, secs. 20-23; art 3, sec. 26, par. 2. And also implied power. Dillon's Mun. Corp. (4 Ed.), sec. 805. Having constructed its sewers the city may impose any reasonable terms and conditions upon which private citizens may use the same. Dillon's Mun. Corp. (4 Ed.), secs. 681 and 805; St. Louis v. Green, 7 Mo. App. 468; s. c., affirmed, 70 Mo. 562; St. Louis v. Woodruff, 71 Mo. 92; St. Louis v. Webber, 44 Mo. 547; Provident Inst. v. Mayor, etc., Jersey City, 113 U. S. 506. (3) Although district sewers are constructed at the expense of the property benefited thereby, the city, as the contracting party, is interested in the payment for such works, and may exact such security therefor as may be reasonable. St. Louis Public Schools v. Woods, 77 Mo. 197; School District v. Livers, 147 Mo. 580. (4) An ordinance of a municipal corporation,

falling within the scope of its law-making power, will not be declared invalid, except upon the clearest proof of arbitrary partiality, unfairness or oppression.    City of Lamar v. Wiedman, 57 Mo. App. 507; Morse v. Westport, 110 Mo. 502; Corrigan v. Gage, 68 Mo. 541.    Every doubt will be resolved in favor of the validity of the ordinance.    St. Louis v. Griswold, 58 Mo. 192; State v. Able, 65 Mo. 357.

*Collins, Jamison & Chappel* and *David Goldsmith* for respondents.

The only contention which arises in this case is that as to the validity of the ordinance referred to in the petition. That the city of St. Louis had the charter power to enact the ordinance appears to us to be beyond reasonable controversy. Sec. 26, art. 3, of the charter of that city, provides: "The mayor and assembly shall have power within the city by ordinance not inconsistent with the Constitution or any law of this State, or of this charter .... to construct and keep in repair all bridges, streets, sewers and drains, and to regulate the use thereof."    The provision is conclusive of the controversy, especially when it is considered that municipal regulations like the one involved have been upheld in other jurisdictions wherein an express power to enact them is not shown to have existed.    Ranlett v. City of Lowell, 126 Mass. 431; Herman v. State, 54 Ohio St. 506.

*Julian Laughlin* and *Thos. S. Meng, Amici Curiae.*

(1) The charter prescribing the method of collection of special tax bills, this method is necessarily exclusive, and the municipal assembly has no power to prescribe a different method.    Charter of St. Louis, art. 6, secs. 22, 24, 25;
    Vol 159 mo—11

Thompson v. Boonville, 61 Mo. 282; Moberly v. Wight, 19 Mo. App. 269. (2) The charter prescribing that tax bills should be delivered to the contractor and collected by him, the municipal assembly has no power to provide for their collection by its officers at the expense of its taxpayers. Knapp v. Kansas City, 48 Mo. App. 485. (3) The charter of the city of St. Louis providing for a proceeding in court to establish the lien of the tax bill, with opportunity to the property owner to put in issue the entire matter, as to whether the work was done, whether it was such as was properly chargeable against the abutting property, or upon a proper showing to reduce the amount of the recovery, the city has no power to deprive the property owner of his day in court, and to require him to pay the tax bill, as issued, though invalid in whole or part. St. Louis v. Bell Telephone Co., 96 Mo. 623; Sedalia Gaslight Co. v. Mercer, 48 Mo. App. 651; Leach v. Cargill, 60 Mo. 316. (4) Proceedings for the establishment of a lien of a special tax bill being *in invitum*, must be strictly construed so as to protect the property owner against confiscation by assessment, and therefore this ingenious scheme to deprive the property owner of his day in court, can not be allowed to stand. Guinotte v. Egelhoff, 64 Mo. App. 366; Rose v. Trestrail, 62 Mo. App. 351. (5) The ordinance is unreasonable, unjust and oppressive and therefore void, in subjecting the property owner to a double penalty, he being compelled to pay fifteen per cent per annum as a penalty, and being at the same time by this ordinance, deprived of the use of the sewer. (6) This ordinance is unreasonable in that its effect is to subject the property owner to fine and imprisonment for failure to pay the tax bill. He being subject by a proper municipal sanitary regulation to fine and imprisonment for failure to connect, and not being allowed to connect without paying the bill.

MARSHALL, J.—This is a suit in equity to restrain the city of St. Louis and its sewer commissioner from issuing permits to the owners of property in Hodiamont Sewer District Number 1, to connect with the said district sewer until the special taxes due plaintiffs as the contractors with the city and the builders of said sewer, are paid.

The petition shows that the city of St. Louis duly enacted a general ordinance which prohibited the connection of any private sewer with a public or district sewer, unless a permit for the connection was first issued by the sewer comsioner, and which further prohibited the issue of a permit by the sewer commissioner for a sewer connection while an assessment made against the property to be drained for the construction of the district sewer remained unpaid; that, while this ordinance was in force, the city of St. Louis duly provided for the construction of a district sewer in Hodiamont Sewer District Number 1, and entered into a contract with the plaintiffs for the construction of that sewer; that thereupon the sewer was constructed by the plaintiffs, and special tax bills issued to them in accordance with the charter of the city; that, in entering into this contract and in carrying it out, the plaintiffs relied upon the ordinance above mentioned; that a large number of the tax bills issued to the plaintiffs as aforesaid, to-wit, tax bills amounting to more than twenty-five thousand dollars, remain unpaid; that the plaintiffs have duly demanded payment from the owners against whom these tax bills were issued, but that such owners deny the validity of the tax bills issued against their property and accordingly refuse payment; that these owners desire and intend to avail themselves of the sewers constructed by the plaintiffs and to connect their respective lots and the dwellings erected thereon with these sewers, notwithstanding their denial of the validity of the tax bills and

their refusal to pay the same; that the defendants, the city of St. Louis and the said sewer commissioner, pretend that said city had not the legal power or capacity to enact said ordinance, and on that ground refused to enforce any of its said provisions, and that the said sewer commissioner threatens and is about to issue, and unless restrained by injunction will issue, to each and every of the said owners a permit for sewer connection with said sewers, notwithstanding the failure and refusal of such owners to pay the tax bills issued against their lots respectively; that if the ordinance was enforced by the defendants all the said unpaid tax bills would be paid at once, but that if the same is not enforced said permits will be issued to the owners against whose lots said unpaid special tax bills have been severally assessed, and that the plaintiffs will be deprived of the protection and benefit resulting from the ordinance and will be put to the expense of three thousand dollars in the collection of said unpaid tax bills, which would otherwise be avoided and saved, and that the plaintiffs are without adequate remedy at law.

To this petition the defendants interposed a general demurrer, which was overruled by the court, and thereon defendants refused to plead further and judgment was entered against them. From this judgment the defendants have appealed to this court.

## I.

The city and its sewer commissioner base their action in issuing permits to persons in the district to connect with the district sewer, notwithstanding such persons have never paid the assessment against their property for the building of such district sewer, solely upon the decision of the St.

Louis Court of Appeals in the case of State ex rel. Peck v. Hermann, 84 Mo. App. 1.

Section 1630, Revised Ordinances St. Louis 1893, provides: "No permit for a sewer connection under the preceding section shall be issued, if the property to be drained by the proposed sewer, or any part thereof, has ever been assessed for the construction of district sewers until such assessment has been paid," etc.

In the Peck case it appeared that the property of relator had been assessed for the construction of this Hodiamont district sewer; that she had not paid such assessment, that she applied to the sewer commissioner for a permit to connect with the district sewer and the sewer commissioner refused to issue the permit because under said section 1630, Revised Ordinances St. Louis, she had not paid such assessment. She thereupon commenced a proceeding by mandamus to compel the sewer commissioner to issue the permit. The circuit court granted a peremptory writ of mandamus as prayed, and the sewer commissioner appealed to the St. Louis Court of Appeals. That court affirmed the judgment of the circuit court, and held that said section of the city ordinance was void for two reasons: First, because the city charter (section 22, article 6) provides for the construction of district sewers and the assessment of the cost thereof against the property in the sewer district; provides that the contractor who builds the sewer shall be paid by special tax bills against such property in such district, makes such tax bills a lien on the property, and provides for their enforcement by suit. Hence the remedy thus afforded the contractor was exclusive and the municipal assembly had no power to amend the city charter and enlarge the contractor's remedy, as section 1630 attempted to; and, second, because while the city charter (section 26, article 3) gives the city express power to con-

struct and keep in repair all bridges, streets, sewers and drains, and "to regulate the use thereof," still section 1630, is void because, "if it be conceded that under the power to regulate, the city may exact the payment of a sum of money for the privilege of connecting a private sewer with a public one, to make such exaction a valid regulation, the sum taken should be for the benefit of the public sewers, to be used in making repairs, for inspection or to defray some other expense which the city may be put to, to maintain and keep the system in good repair and working order, and not for the use and benefit of some private person. The sum demanded of the respondents under the ordinance was not for the benefit of the city, not to pay any debt or discharge any obligation for which the city was legally or morally bound, but a demand that they should first pay a private debt due to a private individual and to discharge a lien on their property. The ordinance is not one to regulate the use of sewers, but its purpose is to force payment of private debts. This is beyond the jurisdiction of the city," etc.

The court of appeals recognizes the force of the decisions of this court in School District v. Livers, 147 Mo. 580, and St. Louis Public Schools v. Woods, 77 Mo. 197, which held that it is within the power of school boards to require its contractors, for the erection of its school buildings, to give bond to secure the claim of subcontractors and materialmen, notwithstanding they would have no claim against the school boards and no mechanic's lien on the buildings, but the court of appeals draws a distinction between those cases and the case at bar, and says the power existed in those cases because the subcontractors and materialmen would otherwise be without an adequate remedy, whereas in this case the contractor who built the sewer has a full, complete and adequate remedy by his special tax bills being a lien on the land in the sewer district and being enforcible at law.

With great respect for the learned judge who wrote the opinion of the St. Louis Court of Appeals, we think he fell into error in that case, and that his decision is not supported by principle and is contrary to precedents.

The charter of St. Louis provides that the cost of constructing district sewers shall be assessed as a special tax against the property in the sewer district, and that the contractor shall have no claim against the city for doing such work but must receive tax bills for his pay, and that such tax bills shall be a lien on the property and may be enforced by suit. These charter provisions are valid and constitutional regulations. [Heman v. Allen, 156 Mo. 534.]

But there is nothing in the charter of St. Louis which, either in express terms or by necessary implication or by reasonable intendment, makes the remedy thus given the contractor an exclusive remedy. Neither can the courts say it is such an adequate and complete remedy as to preclude the city under the power conferred upon it by section 26 of article 3 of its charter from enacting by ordinance, other regulations for the use of the sewers which may have the effect of affording another remedy for enforcing the payment of such special tax bills.

The fact that an existing State law provides a remedy does not prevent a municipal corporation from enacting another remedy as to a municipal matter, if it has the power to so enact given it by its charter either in express terms or by necessary implication from the powers conferred. [St. Louis v. Bentz, 11 Mo. 61; St. Louis v. Schoenbusch, 95 Mo. 618; Manker v. Faulhaber, 94 Mo. 430; State ex rel. v. Walbridge, 119 Mo. 383; Ex parte Kiburg, 10 Mo. App. 442; Kansas City v. Hallett, 59 Mo. App. 160; State v. Noland, 111 Mo. l. c. 484; State ex rel. v. Slover, 113 Mo. 202; Rogers v. Jones, 1 Wend. 237.]

The decision of the court of appeals in the Peck case gives full force to section 22 et seq. of article 6 of the charter as to the method of constructing sewers, but it overlooks the power conferred upon the municipal assembly of that city, by section 26 of article 3 by ordinance "to construct and keep in repair all bridges, streets, sewers and drains, and to regulate the use thereof." If it had been the intention of the charter to make the remedy provided by section 22 et seq. of article 6 an exclusive remedy, the provisions of section 26 of article 3 giving the municipal assembly power, by ordinance, "to construct and keep in repair . . . . sewers," etc., would not have been put into the organic law, but the provision would have been limited to power, by ordinance, to regulate the use of sewers after they were constructed as provided for by section 22 et seq. of article 6.

So that outside of judicial authority, as shown by the cases cited, the city has express charter authority to provide other regulations for the construction and use of sewers besides the provisions of section 22 et seq. of article 6. These two provisions of the same organic instrument, being in *pari materia* must be construed together, and full force given to both, if possible. It is possible for both to stand together. The decision of the court of appeals in effect strikes down the power conferred by section 26 of article 3, without expressly doing so, and without noticing its existence. That court must have overlooked this provision.

Under section 26 of article 3, the municipal assembly had power to enact section 1630, Revised Ordinances 1893. When the plaintiffs made their bid to construct the Hodiamont sewer they had a right to take into account and rely upon the remedy afforded by section 1630, Revised Ordinances 1893, as much as that afforded by section 22 et seq. of article 6 of the charter, and when they entered into their con-

tract to build the sewer, the provisions of the ordinance and of the charter were just as much a part of that contract as if they had been written in the contract. [Semble, Hicks v. Scofield, 121 Mo. l. c. 388.] The advantages and additional security afforded by section 1630 of the ordinance would naturally tend to reduce the price bid for the work, and thus the property owners themselves who have to pay the cost of constructing the sewer, would be chiefly and primarily benefited, for it is but reasonable that, as the risks of collecting their pay for their work are increased, the price bid for the work will be correspondingly increased.

The distinction drawn by the court of appeals between cases where there is no remedy afforded, as illustrated by the School Board cases, of School District v. Livers, 147 Mo. 580, and St. Louis Public Schools v. Woods, 77 Mo. 197, and the Peck case, where there is a remedy afforded, is not well founded. If the school boards have power to create a remedy when the law afforded none otherwise, it would be a greater enlargement of their charter powers, than the creation of an additional remedy, under an express authority of charter to construct sewers and regulate their use, beyond the specific remedy of a lien and a right to sue, could possibly be. In the one instance the remedy created was not provided by law and the power to create was not conferred expressly, while on the other the power to create such a remedy is at least necessarily implied from the power granted.

In City of St. Louis to use of Glencoe Lime & Cement Company v. Von Phul, 133 Mo. 561, this court held that section 26, article 3 of the charter of St. Louis, which gives the municipal assembly power by ordinance "to establish, open . . . . and improve streets," gave ample power to the city to require a contractor for the improvement of a street to give a bond to "pay to the proper parties all amounts due for

labor and material," and to entitle any laborer or material-man to sue on the bond. It was argued there, as here, that the city was not liable to the contractor for the doing of such work and that the contractor received his pay in special tax bills, which were a lien on the property abutting the improvement, and hence it was *ultra vires* for the city to require such a bond to be given. The lien and the right to sue afforded by the charter for tax bills for street improvement is precisely the same as that afforded for building sewers, and the authority to order a street constructed or improved is the same section (sec. 26, art. 3) which authorized the building of this sewer.

If the city had power to create such a remedy for the benefit of materialmen and laborers and impose such an obligation upon a contractor for the improvement of a street, it had quite as much power to enact section 1630, Revised Ordinances 1893, creating the additional remedy for the collection of special tax bills. This case seems to have been overlooked by the St. Louis Court of Appeals. The first ground upon which that court held this ordinance provision void must therefore be held untenable.

The second ground upon which the court of appeals declared section 1630 void is also untenable.

It is admitted that the city has power under section 26, article 3, to regulate the use of sewers. But it is argued that section 1630 is not a valid regulation of the use, but is intended to aid in the collection of a private debt, and not for the benefit of the public; that to be a valid regulation the sum exacted from the property owners for the privilege of connecting with the public sewer, must be used by the city in making repairs on the sewer, for inspection and for maintaining and keeping the system in working order.

The court of appeals again fell into error, for the very

section (section 22, article 6) which authorizes the cost of the sewer to be assessed against the property in the sewer district, expressly says: "Provided, that the repairs and other incidental expenses of district sewers shall be paid out of the general revenue."

It would not be competent, then, for the city to regulate the sewers by making persons desiring to connect with them pay any sum whatever to be used by the city in repairing or inspecting the sewers. Such an ordinance would indirectly make the property owners pay the cost of repairs and other incidental expenses, when the charter requires the city to pay such expenses out of general revenue.

The power to regulate commerce with foreign nations is defined by the Supreme Court of the United States, in Gibbons v. Ogden, 9 Wheat. l. c. 196, as follows: "It is the power to regulate; that is, to prescribe the rule by which commerce is to be governed. This power, like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the Constitution." In other words, the power to regulate the use, means the power to fix the terms upon which it may be used. There is not only nothing unreasonable about section 1630 which requires that one who desires to use a district sewer shall pay the proportion of the cost of the sewer which has been assessed against his property, but on the contrary it is but complete justice and fairness to the city, that has provided the public improvement, the contractor whose labor and money constructed the sewer, and the other property owners who have paid or are to pay their proportion of the cost of such work. Any such regulation, where no remedy previously existed for the enforcement of such obligation, or in addition to and supplementary of some other remedy afforded by some other provi-

sion of law, finds support and countenance in fundamental principles of law, equity and morality. If section 1630 enures to the benefit of the contractor, so does the bond required by the city, and by the school boards enure to the benefit of the laborer and materialmen. If the city has power under section 26 of article 3, to create a remedy when none existed before, and if the school boards have an implied but not an express power to create such a remedy, then it must follow that the creation of an additional remedy pursuant to the express power of section 26 of article 3 of the city charter, is certainly no more of an enlargement of the city charter than the creation of the new remedy would be.

The court of appeals concedes that, "under the power to regulate, the city has the unquestioned authority to impose any reasonable terms and conditions upon which citizens may connect their property with its sewers," citing St. Louis v. Green, 70 Mo. 562; St. Louis v. Woodruff, 71 Mo. 92; St. Louis v. Webber, 44 Mo. 547; Provident Inst. v. Mayor, 113 U. S. 506, and Dillon on Mun. Corp. (4 Ed.), secs. 681 and 805.

But whilst so conceding, it holds section 1630 unreasonable and void because it requires a property owner before using a district sewer to pay his just and proportionate part of the cost of the sewer, which by the provisions of the organic law he is required to pay and which commonest principles of fairness would require he should do. The conclusion is a manifest *non-sequitur* from the premises conceded.

This conclusion is supported by the adjudicated cases and by the law writers. Judge DILLON in his unexcelled work on Municipal Corporations, vol. 2 (4 Ed.), p. 986, says that the power to construct and repair streets carries with it, without special grant, the power to construct drains and sewers and

that, "when constructed, the corporation will incidentally possess the power to pass ordinances regulating their use and the price at which private persons may tap them."

In Ranlett v. City of Lowell, 126 Mass. 431, it appeared that a district sewer had been built and the cost had been assessed against the adjoining property. The city ordinance provided that "the board of aldermen may grant written permission to any person to enter any main drain or common sewer, provided such person shall first pay the assessments." The court said: "The owners of the adjoining estates were assessed for the reason that those estates were benefited and made more valuable by being furnished with means or opportunity of securing suitable drainage. But, according to the ordinance of the city, the landowner, in order to connect his own private drain with the main sewer, was required to obtain the written consent of the mayor and aldermen, to pay his assessment, and, in the materials and construction of his drain, to comply with the directions and conditions that the mayor and aldermen might prescribe. We see nothing unreasonable or contrary to the general policy of the law in any of the provisions of this ordinance."

The case of Hermann v. The State ex rel., 54 Ohio St. 506, is so much like the case at bar and so directly in point that, at the risk of prolixity, it is reproduced here.

"The plaintiffs in error constitute the board of administration of the city of Cincinnati. In the court of common pleas a peremptory writ of mandamus was awarded on the petition of Cooper against the board, commanding them to permit him to tap the sewer in Ashland street, upon which his residence fronts, on payment by him of the usual license fee of five dollars, but without payment of any portion of the cost of constructing the sewer. The material facts are that the city constructed a system of sewers on Walnut Hills, in-

cluding the Ashland street sewer, at a cost of about $142,000. It made assessments on abutting property to the extent of two dollars per front foot, which amounted to about half the cost of construction. Some of the assessments were paid, but a portion of the property owners, including him who was then the owner of Cooper's property, resisted the assessment upon the ground of fraud by the contractor, and their defense finally prevailed. In consequence thereof the city was adjudged to pay the balance of the contract price. When Cooper applied to the board for a permit to tap the sewer, it refused to grant it except upon compliance by him with the following rule, which it had previously adopted:

" 'Wherever public sewers have been constructed, and the cost thereof has been wholly or partly paid out of the funds of the city, and the owner of any abutting property makes application for permit to tap such sewer, no permit shall be issued to any such abutting owner unless he shall have paid the assessment or assessments levied against his said property for the cost of said sewer; or if for any reason said assessments have not been paid, or have been released or no assessment has been levied, no permit shall be granted unless such person shall first pay into the city treasury, for the purpose of repaying the city the amount paid out or to be paid out by said city on account of said sewers a sum equal to an amount per front foot to be determined by taking the total cost of constructing the main and lateral sewers and drains into which he desires to tap, and divide the gross amount by the number of front feet abutting upon said sewers: Provided, however, that the amount so to be paid shall in no case exceed the sum of two dollars per front foot of the property abutting.'

"The rule adopted by the board of administration is not inconsistent with the judgment that the assessments for the

construction of the sewer in question were void.   The assessments were asserted against the owners of all abutting property, whether vacant or improved.   They were asserted without regard to the use of the sewer.   The rule in question prescribes conditions upon which connections may be made for the actual use of the sewer.

"The board is authorized by section 2402, Revised Statutes, to prescribe rules and regulations for the tapping of sewers.   Certainly, it may not prescribe an unreasonable rule.   In determining whether this rule is reasonable it is important that the system of sewers of which this is a part was constructed by the city with a view to assessing the cost thereof, within the limit of two dollars per foot, upon the abutting property, which, it is admitted, the statute authorized.   The rule in question was adopted and properly conditioned to require that those who had not paid assessments should, when desiring to use the sewer, accept an equal burden with those who had.   We can not say that the rule is unreasonable.   Its application to this case is obvious.  Judgment reversed."

It is clear that section 1630, Revised Ordinances St. Louis 1893, is a valid, reasonable and proper ordinance regulation.

It follows from the foregoing that the case of State ex rel. Peck v. Hermann does not declare the true law, and it must not therefore be any longer regarded as authority in this State.

## II.

It appears from the statement of Peck's case and is stated by counsel acting as *amicus curiae* in this court, that the city ordinances prohibit any person from connecting a

private drain with a public or district sewer without a permit from the city, and that section 442, Revised Ordinances 1893, provides that every water-closet or privy connected and used in any dwelling house within the city limits, must be connected with some public, district or private sewer adjoining the premises upon which such building is erected, and if not so connected, such water-closet or privy shall be deemed a nuisance, and may be abated. And so it is argued by the *amicus curiae* that a houseowner must connect with a sewer or be guilty of maintaining a nuisance, and that he can not connect with a sewer unless he gets a permit from the city to do so, and that the city will not give him a permit if he has failed to pay the assessment against his property for constructing the sewer he seeks to use. This is relied on as a great hardship. Properly considered it is only right and just. If he has a water-closet in his house and it is not connected with a sewer, the refuse of the water-closet must be discharged either on his own land or on the street. In either event he is creating and maintaining a nuisance to himself and his neighbors. [Kirkwood v. Cairns, 44 Mo. App. 88.] And this would be true without any ordinance. This evil he could avoid by not having a water-closet in his house. On the other hand if he wants to use a sewer it is plainly his duty to pay his proportionate part of the cost of the sewer. Otherwise he will enjoy benefits that do not belong to him or his property naturally, and which have been furnished by the city or the contractor, without paying anything or his just share of the cost thereof. So there is no hardship or injustice in requiring him to do right and equity when he asks for equity. No ordinance compels him to have a water-closet in his house. The ordinance simply forbids him to discharge the refuse of his water-closet on his own premises or on the public streets, and this is not only legal and proper, but it is

exercising a police power which the city is obliged to execute in the protection of public health.    And the offense constitutes a common law nuisance, which is not increased by the ordinance.    In neither contingency is he asked to do anything but what is right and honest and proper, and in any event, if he does not want to do right and does not want to pay for the construction of the sewer he seeks to use, he has it in his power to escape all obligation to the city and the public by not maintaining a water-closet in his house, and by defending against the special tax bill when he is brought into court.

But whether this ordinance is valid or invalid, it in no sense determines the validity or invalidity of section 1630, and can not in any manner impair or take away the express power conferred on the city to construct sewers and regulate the use thereof, and to prescribe the terms upon which owners of private property may connect therewith.    Both sections are based upon the police power of the State which has been delegated to the city, the one, section 1630, in express terms by section 26 of article 3 of the charter, and the other, section 442, by paragraph 14 of section 26 of article 3 (the general welfare clause) which confers upon the city the express power "to pass all such ordinances, not inconsistent with the provisions of this charter, or the laws of the State, as may be expedient, in maintaining the peace, good government, health and welfare of the city," etc.

The judgment of the circuit court is right and is affirmed.    All concur.