THE TERRITORY OF HAWAII, BY C. S. HOLLOWAY, SUPERINTENDENT OF PUBLIC WORKS, *v.* CECIL BROWN, EXECUTOR, AND ABIGAIL CAMPBELL PARKER, EXECUTRIX, OF THE LAST WILL AND TESTAMENT OF JAMES CAMPBELL, DECEASED.

APPEAL FROM DISTRICT MAGISTRATE, HONOLULU.

ARGUED MARCH 9, 16, 1908.                    DECIDED APRIL 30, 1908.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

CONTRACTS—*agreement to pay sewer rates.*
> An agreement with the superintendent of public works "to pay such rates annually for the use of the sewer as may be fixed" is enforceable.

OPINION OF THE COURT BY HARTWELL, C.J.

This is an action brought in December 1906 to recover the sum of $133.50 and interest from June 30, 1904, for sewer rates from December 31, 1902, charged to the James Campbell Estate for use of the public sewer on Queen street, Honolulu, in connection with the Campbell block. The complaint avers that on March 2, 1901, the defendant Brown, executor of Campbell's will, in order to obtain the use of the public sewer for the property, applied to McCandless, predecessor of Hollo-way, superintendent of public works, for permission, which was given, to connect it with the sewer, agreeing to pay such rate annually for use of the sewer as might be fixed and that it was fixed at $89 annually for the Campbell block. The application is signed "Cecil Brown, executor last will, etc., James Campbell," the applicant agreeing to conform to rules of the board of health relating to plumbing and sewer connection, to obtain the permission of the road supervisor to tear up the streets if necessary in order to make the connection with the

sewer main and then to place the road in a good safe condition, "and to pay such rates annually for the use of the sewer as may be fixed." The defendants demurred to the complaint on the grounds that it did not show authority of the plaintiff or his predecessor to assess the rates, or his legal capacity to sue; that the court had no jurisdiction of the subject matter, and that the complaint did not state a cause of action. The demurrer was sustained January 20, 1908.

The defendants do not object to the action on the grounds that it is brought by the superintendent of public works in the name of the Territory rather than by the attorney general under Sec. 2009 R. L., or that, after the executors had been discharged (18 Haw. 234), it was brought against two of them for breach of an agreement made by one executor, or that it was brought by the successor of the superintendent with whom the agreement was made and continued in his name after he in turn was succeeded by a new incumbent.

The claim of nonliability is based on the absence of statutory power in the superintendent to assess or to require payment of the rates. The defendants contend that "municipal authorities cannot levy an assessment for an improvement without express legislative permission," 2 Smith, Mun. Corp. Sec. 1229; that exercise of the taxing power is legislative, Judson, Taxation, 364; that power to tax is not usually implied "from legislative authority permitting certain improvements to be made," 2 Dillon, Mun. Corp. 3 Ed. Sec. 764; that when authority is given by a municipal charter to improve sidewalks, the means being provided by an annual tax, special assessments are not necessary to execute the grant of power and therefore are not "allowable to be exercised by implication or otherwise in the absence of any express authority in the charter," *Fairfield v. Ratcliff*, 20 Ia. 396; that authority to require property to bear the expense of local improvements is included in the taxing power and that it is generally considered to be a question of legislative

expediency whether the expense shall be paid out of the general treasury or assessed upon the property specially benefited. Judson, supra, Sec. 367; Dillon, supra, Sec. 752.

The case is not within the rule applicable to unauthorized assessments made upon owners or occupants of property abutting upon streets in order to obtain funds for defraying the expense of public improvements which benefit the property. The defendants' request for permission to connect the property with the sewer and their promise to pay for use of the sewer are not shown to have been required by any rule or regulation of the superintendent of public works or of the board of health. It was a voluntary offer which presents the question whether, after its acceptance and the subsequent use of the sewer, the defendants can avoid the contract so made on the ground that it was illegal either as contrary to public policy or because it was ultra vires.

By Act 6 of April 14, 1904 (Ch. 84 R. L.), the superintendent is required to direct and superintend the connecting of premises with the public sewer, charges for use of the sewer to be fixed from time to time by him subject to the approval of the governor, to be "reasonably approximate to the cost of work done and material used," and "as nearly as reasonably may be, so that the entire yearly receipts for sewer use shall not exceed the total yearly interest on the bonds representing the cost of the sewer system." It is not averred, and cannot be inferred, that the rates charged to the defendants were such as had been fixed under the act, but it may be inferred that they were fixed by the superintendent, in the absence of statutory authority. If the agreement contemplated payment of rates which the superintendent should fix when authorized by statute to do so no right would be impaired by charging rates when so fixed, but there is nothing in the agreement on which to base an inference that it was made in reference to anticipated legislative action. Either the agreement is too uncertain to be a contract in its

failure to express an essential term, or else it may be taken to mean that the rates were to be fixed by the superintendent.

The agreement has an illusory appearance. A promise that for certain services such remuneration be made as shall be deemed right gives no right of action to the person who performed the services, *Taylor v. Brewer,* 1 M. & S. 290, an action by a bankrupt's assignees to recover compensation for work done by the bankrupt. Ellenborough, C. J., regarded this "an engagement accepted by the bankrupt on no definite terms, but only in confidence that if his labor deserved anything he should be recompensed for it by the defendants. This was throwing himself upon the mercy of those with whom he contracted and the same thing does not unfrequently happen in contracts with several of the departments of government;" Grose, J., said the defendants "were to judge whether any or what recompense was right;" Le Blanc, J., "It seems to me to be merely an engagement of honor;" Bailey, J., "It was to be in the breast of the committee (defendants) whether he was to have anything and, if anything, how much." In *Bryant v. Flight,* 5 M. & W. 514, plaintiff performed services on an agreement that "the amount of payment I am to receive I leave entirely for you to determine." A majority of the court thought that the agreement implied that some amount was to be paid and that "the jury were to ascertain how much the defendant, acting bona fide, would, or ought, to have awarded;" Parke, B., considered it "a mere honorary obligation on the part of the defendant."

"The circumstances of each case (or in a written instrument the context) must be looked to for the real meaning of the parties; and 'I leave it to you' may well mean in particular circumstances (as in various small matters it notoriously does), 'I expect what is reasonable and usual, and I leave it to you to find out what that is,' or, 'I expect what is reasonable, and am content to take your estimate (assuming that it will be made in good faith and not illusory) as that of a reasonable man.'" Pollock, Contracts, 45.

Territory v. Brown, 19 Haw. 41.

If the defendants' promise was to pay for the use of the sewer whatever the superintendent should consider the service to be reasonably worth there would be a right of action to recover the reasonable value of the service unless the agreement was illegal or the defendants were estopped from disputing its legality, but we think the promise means that the defendants were to pay the rates which the superintendent should fix. Although the superintendent had no express statutory authority to require payment for the use of the sewer yet in the opinion of a majority of the court his acceptance of a promise to pay for its use was within the general scope of his duties in the "general supervision, charge and control" over public highways (Sec. 594 R. L.) and "superintendence and management of the internal improvements of the Territory" (Sec. 489 R. L.), when taken in connection with the authority of the acts appropriating money for the construction of the sewer under his direction. In this view the agreement was not illegal.

There is a distinction in legal effect between agreements with public officers which are illegal because ultra vires and those which are illegal because contrary to positive law, to morality or to public policy. Pollock, supra, 234. If this was an illegal agreement it was because of its tendency "to interfere with the internal administration of the government" (Harriman, Contracts, Sec. 175,) by introducing "mercenary considerations to control the conduct of a private individual (public official) in a case where such conduct ought to be influenced only by a regard for the public welfare." Harriman, supra, Sec. 181.

Many agreements, even if made without authority of law, clearly conduce to public welfare. It is for the public interest that streets be cleared of garbage and sprinkled with water and public sewers used. Upon failure or in the absence of appropriations for these objects owners of property abutting upon the streets and the public generally are benefited by their accomplishment by means of voluntary contributions and there can

be no objection to such contributions if made without promise by the superintendent to ask for their reimbursement from the legislature. If there is no reason of public policy against voluntary contributions to enable the government, when money provided by the legislature is not available, to keep the streets in sanitary condition, there can be no objection on that ground to agreements to pay money for the purpose or that the agreements should leave to the superintendent, who has charge of the streets, to ascertain how much is required, assuming that he would act honestly and impartially in apportioning it among the property owners who desire to contribute. To hold that such agreements are illegal because the law does not authorize them and therefore that they can be repudiated by those who made them, after receipt of benefits from expenditures made in reliance upon their agreements, does not accord with popular notions of justice or right, and in our opinion is not required by law.

The agreement is enforceable by the superintendent and therefore there is no occasion to consider the rule which, under certain limitations, estops one who has accepted the benefit of an agreement from pleading its illegality. This ruling allows the plaintiff to declare, as it has done, upon the agreement, and does not require a claim to be made for a reasonable sum in return for the use of the sewer.

Demurrer overruled, case remanded.

*W. L. Whitney, Deputy Attorney General (C. R. Hemenway, Attorney General,* with him on the brief), for plaintiff.

*C. F. Clemons (Thompson & Clemons* on the brief) for defendant.