McCandless v. Campbell, 20 Haw. 411.

# L. L. McCANDLESS *v.* MARSTON CAMPBELL, SUPER-INTENDENT OF PUBLIC WORKS OF THE TERRITORY OF HAWAII.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED MARCH 9, 1911.                    DECIDED MARCH 24, 1911.

ROBERTSON, C.J. PERRY AND DE BOLT, JJ.

CONSTITUTIONAL LAW—*delegation of powers.*

It is an established general doctrine of constitutional law that the power conferred upon the legislature to make laws cannot be delegated to any other authority.

SAME—*taxing power—health regulations.*

The power of taxation may not be delegated to administrative officers. The power to enact health regulations, having the force of law, may be delegated to municipalities and local boards of health.

TAXATION—*sewer rates, a tax.*

The sewer rates provided for by section 1036 of the Revised Laws, in view of the provisions of ordinance No. 6 of the City and County of Honolulu and the plumbing regulations of the board of health constitute a tax, and are, therefore, subject to the principles which govern the imposition and assessment of taxes.

SAME—*illegal delegation of power.*

Sections 1036, 1037 and 1038, Revised Laws, in so far as they relate to the imposition, assessment and collection of rates for the use of the public sewers in the City and County of Honolulu constitute an illegal delegation of the taxing power, and are invalid.

MANDAMUS—*remedy by.*

Mandamus lies to compel the superintendent of public works of the Territory of Hawaii to grant the application of a property owner for permission to connect his premises with the public sewer when such owner has complied with all legal requirements to entitle him to connect, and no valid reason is shown for a refusal to issue the permit.

OPINION OF THE COURT BY ROBERTSON, C.J.

In a petition for a writ of mandamus before a circuit judge of the first judicial circuit, it was alleged that the petitioner is a resident citizen of the Territory of Hawaii, and the owner of a building and the land upon which it stands, situate on the

corner of Pauahi street and Nuuanu Avenue, in the City and County of Honolulu; that said building is accessible to the public sewer in said Pauahi street; that the respondent is the superintendent of public works of the Territory of Hawaii; that by section 8 of ordinance No. 6 of the said city and county, it is provided that, "in the construction, reconstruction or alteration of any building of any description, in which plumbing fixtures are to be placed all plumbing work shall be connected with the public sewer, when such sewer is accessible;" that section 30 of said ordinance provides that any person violating any of the provisions of the ordinance shall be deemed guilty of a misdemeanor, and shall be fined not exceeding five hundred dollars or be imprisoned not more than six months; that section 2 of the plumbing regulations of the board of health (which have the force of law) contains provisions to the same effect as those of section 8 of the aforesaid ordinance; that by virtue of the said ordinance and the said plumbing regulations of the board of health the connection of the petitioner's building is an involuntary act, and that the petitioner is compelled to connect his building with the sewer or abandon it; that the petitioner presented to the respondent, upon the printed form provided for the purpose, an application for permission to connect his building with the sewer, at the same time tendering the respondent the required fee; that the respondent refused to receive, act upon, or grant said application, alleging as his reasons for such refusal, the fact that the petitioner had erased from the printed application the words "and to pay such rates annually for the sewer as may be fixed," and that the petitioner had declined and refused to enter into any contract or agreement to pay such rates annually for the use of the sewer as may be fixed pursuant to the provisions of sections 1036 and 1037 of the Revised Laws of Hawaii; that those sections of the Revised Laws are illegal and unconstitutional, because, in brief, that they are void for uncertainty and leave the rates to be fixed by "guess work," that they constitute an act of spoliation under legislative

form, attempt to create and impose double taxation, and are a void delegation of legislative power; that said sections are in conflict with the provisions of the Constitution of the United States requiring compensation to be made when private property is taken for public use, and declaring that no person shall be deprived of property without due process of law, and that they violate the provisions of the Fourteenth Amendment to the Constitution which, it is said, require equality and uniformity in taxation; it is also alleged that it was the duty of the respondent, as superintendent of public works, to grant petitioner's application; and petitioner prayed for the issuance of a writ to compel the respondent to act upon said application and to grant the same. A copy of the petitioner's application is attached to the petition. It shows, among other things, the number of fittings and the character of the plumbing in the petitioner's building; and in that part of the application which specifies the conditions to which the applicant agrees, under penalty of having the connection with the sewer severed, the clause providing for the payment of annual rates was expunged.

The respondent demurred to the petition and alternative writ on the ground that it was not shown that he was under any clear legal duty to receive, act upon or grant the petitioner's said application.

The demurrer was overruled, and the judge allowed an appeal to this court.

The circuit judge was in error in holding that the respondent, by his demurrer, admitted the alleged unconstitutionality of the statute. That a statute is unconstitutional is a matter of law. A demurrer does not admit such an allegation. Furthermore, no court should hold a statute unconstitutional simply because litigants have alleged and conceded it to be in conflict with the constitution. (Ante p. 404.)

Section 1036 of the Revised Laws provides that the rates of charges for the use of the sewer shall be fixed from time to time by the superintendent of public works, subject to the ap-

proval of the governor, and "shall be fixed as nearly as reasonably may be, so that the entire yearly receipts shall not exceed the total yearly cost of maintaining and repairing the sewers together with the yearly interest on the bonds representing the cost of the sewer system." Section 1037, provides that these charges shall be paid semi-annually in advance. Section 1038, imposes a penalty for delinquency in the payment of the rates, and provides that they shall be a lien upon the property connected with the sewer. Section 1039, confers jurisdiction on the district magistrates to hear and determine all civil actions for the collection and payment of sewer rates and charges irrespective of the amount claimed.

Act 105 of the Session Laws of 1909, provides that all revenues derived from the Honolulu water and sewer works shall be used for the expenses of maintenance and operation of said works; the payment of interest on the indebtedness incurred in the construction, improvement and extension of said works; and that not less than ten per cent. of the yearly gross receipts shall be set aside for the payment of said indebtedness.

The City and County of Honolulu is authorized, by statute, "to make and enforce within the city and county of Honolulu all necessary ordinances covering all local police matters of sanitation, inspection of buildings, condemnation of unsafe structures, plumbing, sewers, dairies, milk, fish, cemeteries, burying grounds, interment of the dead and morgues and the collection and disposition of rubbish and garbage, and no ordinance shall be held invalid on the ground that it covers any subject or matter embraced within any statute or statutes of the Territory whether such ordinance is in conflict with any such statute or statutes or otherwise." Section 23, Act 118, Session Laws of 1907, as amended by Section 1, Act 99, Session Laws of 1909.

Section 8 of ordinance No. 6, of the City and County of Honolulu, enacted August 4, 1909, provides that all plumbing work in any building of any description shall be connected with -

the public sewer where such sewer is accessible. The penalty provided for any violation of the ordinance is fixed at a fine not exceeding five hundred dollars or imprisonment in the city jail for not more than six months.

The board of health of this Territory is authorized to make such regulations respecting nuisances, sources of filth and causes of sickness as it shall judge necessary for the public health and safety. Penal Laws (1897), Sec. 870; Rev. Laws, Sec. 991. By a subsequent amendment (Act 42, Session Laws, 1905) such regulations require the consent of the governor. Such regulations must be published, and the penalty for their violation is fixed by the statute at a fine not exceeding one hundred dollars.

Section 2 of the plumbing regulations of the board of health, the enactment of which preceded that of the said sections of the Revised Laws, provides that "Every building of any description in which there are plumbing fixtures or in which plumbing fixtures are to be placed shall be connected with the public sewer where such sewer is accessible, and where there is no sewer accessible with a cesspool connected in accordance with the rules of the board of health."

In *Territory* v. *Brown,* 19 Haw. 41, it was held that an agreement made by the defendant prior to the enactment of the provisions now contained in sections 1036 to 1039 of the Revised Laws, by which the defendant agreed to pay to the superintendent of public works "such rates annually for the use of the sewer as may be fixed" was a valid and enforceable one.

It was there said (p. 43): "The case is not within the rule applicable to unauthorized assessments made upon owners or occupants of property abutting upon streets in order to obtain funds for defraying the expense of public improvements which benefit the property. The defendants' request for permission to connect the property with the sewer and their promise to pay for use of the sewer are not shown to have been required by any rule or regulation of the superintendent of public works or of the board of health. It was a voluntary offer which pre-

sents the question whether, after its acceptance and the subsequent use of the sewer, the defendants can avoid the contract so made on the ground that it was illegal either as contrary to public policy or because it was ultra vires."

In *Territory* v. *Tue Bun*, ante p. 267, it was held that the defendant, who had voluntarily entered into the agreement required by the superintendent, was not in a position to question the validity of the demand for sewer rates. It was there pointed out that there was "no evidence that the defendant made the agreement for the payment of sewer rates from fear of being held liable for the penalty under the regulation of the board of health" (p. 269), and that "if he had seasonably made the objections which he now makes to the legality of the rates or to the constitutionality of the act his objections might have received consideration from the superintendent who would then have had an opportunity to be advised whether the objections were well taken, and in that event he might have applied to the legislature for an amendment of the law." (p. 271.)

In *McCandless* v. *Campbell*, ante p. 264, it was held, the validity of the legislation not then being questioned, that it was within the statutory powers of the superintendent to require an applicant for sewer connections to sign an agreement to pay such annual rates for the use of the sewer as may be fixed, as a condition precedent to the granting of permission to connect with the sewer.

In the view we take of this case it will be necessary only to deal with the contention which has been advanced on behalf of the petitioner that the provisions of the Revised Laws, above referred to, constitute an illegal attempt on the part of the legislature to delegate the power of taxation to the superintendent of public works.

It is an established doctrine of constitutional law that the power conferred upon the legislature to make laws cannot be delegated to any other body or authority. Cooley's Constitutional Limitations (6th ed.) 137; 1 Watson on the Constitu-

McCandless v. Campbell, 20 Haw. 411.

tion 117. To this general principle, however, there are some exceptions. One is that the legislature may delegate the power of taxation to municipal corporations. Cooley on Taxation (2d ed.) 63. And another is that the power to enact regulations concerning the public health may be delegated to municipal corporations or local boards of health. 4 Am. & Eng. Enc. Law 599. Though this latter has been held not to be a delegation of legislative power, but merely the providing of an agency for carrying out the legislative enactment. *Kirk* v. *Wyman* (S. C.), 65 S. E. 387, 389.

There is no provision in the act creating this Territory (31 Stat. L. 141) which expressly forbids the delegation of powers by one department of the government to another, but the application of the principle that powers cannot be delegated by those upon whom they have been conferred would seem to be required by the nature of the various powers, the terms used and the purposes for which they were bestowed, except in so far as through long practice the delegation of powers has become customary throughout the United States.

The legislature, in delegating the power to tax, can delegate it only to a municipality itself. It cannot confer it upon ministerial or administrative officers. Cooley on Taxation (2d ed.) 64; *State* v. *Mayor,* 103 Ia. 76; *Van Cleve* v. *Sewerage Commissioners,* 71 N. J. L. 574, 583.

It has long been the practice in this country to invest boards of health with what seem to be legislative powers relating to matters affecting the public health, and, in this connection, to authorize the promulgation of rules and regulations which have for their object the protection of the public health and the prevention of disease. The validity of such legislation has been repeatedly affirmed. *Polinsky* v. *People,* 73 N. Y. 65; *People* v. *Vandecarr,* 175 N. Y. 440; *Salem* v. *Eastern R. Co.,* 98 Mass. 431; *Belmont* v. *Brick Co.,* 190 Mass. 442; *Blue* v. *Beach,* 155 Ind. 121; *State* v. *Kirby,* 120 Ia. 26; *State* v. *Zimmerman,* 86 Minn. 353.

Immemorial usage and the necessities of local government fully justify the delegation of police powers of at least a minor nature to municipalities and local governing bodies.

It has been held that municipalities may, in the interest of the public health, compel property owners to connect their premises with the public sewer. *Com.* v. *Roberts,* 155 Mass. 281; *Hill* v. *St. Louis,* 159 Mo. 159; *Martin* v. *Hilb* (Ark.), 14 S. W. 94.

The validity of either the ordinance or the regulation of the board of health, above referred to, has not been questioned by counsel for either party. But we feel justified in holding, at least for the purposes of this case, that their validity cannot be successfully assailed. It is evident, therefore, that the petitioner's claim that his application for permission to connect his building with the public sewer is not a voluntary act, but one compelled by those laws, is well founded.

Counsel for the respondent has correctly pointed out that the petitioner's contention is based entirely upon the assumption that the sewer rates in question are a tax, and, in arguing that they cannot be regarded as a tax, he relies largely on the former decisions of this court which have been above noticed, and on the case of *Richards* v. *Ontai,* ante p. 335.

The question whether these sewer rates constitute a tax is one of much difficulty, and we believe it has not been decided so far as its present application is concerned by any of the cases referred to. We have been referred to no case, and have found none, which could be regarded as a controlling authority on the question here presented.

In *Richards* v. *Ontai,* it was decided merely that sewer rates were not to be regarded as taxes within the terms of a lease providing that the lessor should pay the "taxes" on the demised premises and that the lessees should pay "all other charges."

The case of *Jones* v. *Commissioners, etc.,* 34 Mich. 273, was also cited. It was there said (p. 275) that, "water rates are in no sense taxes but are nothing more than the price paid for

water as a commodity." In that respect that case is clearly distinguishable from the case at bar.

It is argued on behalf of the respondent that, notwithstanding the ordinance and board of health regulation, the application for permission to connect with the sewer must be regarded as the voluntary act of the petitioner because there is nothing in the law to compel him to erect a building at all, certainly not one with plumbing in it. The court takes judicial notice of the fact that the location of petitioner's building is within the business portion of the city where land is valuable. We think that the argument referred to does not afford a satisfactory response to the contention that the making of the application is not a voluntary act. Public as well as private interests benefit from the improvement of city property.

In *Carson* v. *Brockton Sewerage Commission,* 182 U. S. 398, it was held that the sewer rate there involved was not a tax. But in that case the court emphasized the fact that there was no board of health regulation, or other law, requiring property owners to connect their premises with the public sewer. (pp. 401, 403.)

If the rate was made merely nominal or simply enough to cover the cost of inspection it might properly be regarded as an office fee or as an exercise of the police power, but the statute plainly shows, to our minds, that it was designed to be a revenue producing measure, and, as such, is to be regarded as a tax and, therefore, subject to the principles which govern the imposition and assessment of taxes. The rate demanded, and which the petitioner refuses to pay, is in addition to the "application fee" charged, which latter, it is alleged, the petitioner is willing to pay and has tendered.

The report of the superintendent of public works for the biennial period ending June 30, 1910, shows (p. 130) that for the fiscal year ending that date he had collected the sum of $209 for sewerage application fees, and the sum of $35,882.06 for sewer rates, including penalties on delinquent payments.

"Taxes are the enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government, and for all public needs." Cooley on Taxation (2 ed.) 1.

"Taxes are generally defined as burdens or charges imposed by legislative authority on persons or property to raise money for public purposes, or, more briefly, 'an imposition for the supply of the public treasury.'" 27 Am. & Eng. Enc. Law, 578.

"The word 'taxes' is very comprehensive, and properly includes, as indicated in the foregoing definition, all burdens, charges and impositions by virtue of the taxing power with the object of raising money for public purposes." Ib. 579.

There are "general" and "special" taxes. *Illinois Central Railroad* v. *Decatur,* 147 U. S. 190, 197.

These sewer rates, imposed under the circumstances shown, fall clearly within the foregoing definitions of a tax. They are "enforced contributions," and "burdens or charges," imposed on property in aid of the public treasury and for the support of the government.

The power of taxation is essentially a legislative power. It cannot be delegated except to municipalities which themselves exercise subordinate legislative powers. The power to tax must not be confused with the administrative duties which are necessarily involved in the assessment and collection of taxes. In the nature of things, the legislature itself cannot attend to all the details involved in the enforcement of the law. Those must of necessity be entrusted to administrative officers. But the tax can be imposed only by the legislative power. No arbitrary discretion to fix the rate of a tax, or to determine the method by which it is to be levied, or to adjust its apportionment among the tax-payers, where the principles upon which the apportionment is to be made are not fixed, can be left to the executive branch of the government.

"There is a difference between making the law and giving effect to the law; the one is legislation and the other administration. We conceive that the legislature must, in every instance, *prescribe the rule under which taxation may be laid;*

it must originate the authority under which, after due proceedings, the tax gatherer demands the contribution; but it need not prescribe all the details of action, or even fix with precision the sum to be raised or all the particulars of the expenditure. If the rule is prescribed which, in its administration, works out the result, that is sufficient; *but to refer the making of the rule to another authority,* would be in excess of legislative power." Cooley on Taxation (2d ed.) 62.

It will be observed that the only rule fixed by the legislature with reference to the tax in question is that the total amount of the revenue to be raised by its levy shall approximate as nearly as reasonably may be, but not exceed, the total yearly cost of maintaining and repairing the sewers together with interest on the bonds which represent the cost of installing the system. It is not a mere matter of calculation that has been left to the superintendent. The legislature failed to fix the principle upon which the charges were to be based. No rule or method is prescribed by which the superintendent shall be guided in fixing or adjusting the charges. It is left entirely to the discretion of the superintendent for the time being whether to fix the rates according to the length of street frontage of premises; or their area; or by the number of fixtures connected; or by a combination of those methods; or pursuant to any other plan which he may see fit to adopt. In short, the legislature has attempted to authorize the superintendent to levy the tax, and not merely to collect a tax which it alone may levy. It cannot be done legally.

"The determination of the amount or rate of a tax to be imposed is as essential in exercise of the taxing power as the designation of the property to be taxed or the time for its collection or enforcement." *State* v. *Ashbrook,* 154 Mo. 375, 389.

See also *State* v. *Glavin,* 67 Conn. 29; *Reelfoot Lake Levee District* v. *Dawson* (Tenn.), 36 S. W. 1041; *Houghton* v. *Austin,* 47 Cal. 646; *People* v. *Kings County,* 52 N. Y. 556; *Bernards Tp.* v. *Allen,* 61 N. J. L. 228; *Van Cleve* v. *Sewerage Commissioners,* supra; *State* v. *Mayor,* supra.

We hold that sections 1036, 1037 and 1038 of the Revised Laws, in so far as they relate to the imposition, assessment and collection of rates for the use of the public sewers, being an illegal delegation of the taxing power, are invalid, and that the respondent is not authorized to demand from the petitioner an agreement to pay such rates as a condition precedent to the issuance of a permit to connect with the sewer. In so holding we are, of course, dealing with the case as it now stands. This appeal is from an interlocutory order. If, after answering, the respondent should show a valid reason for refusing to grant petitioner's application, as, for example, that the limit of the capacity of the sewer has been reached, so that additional connections cannot, with safety, be allowed, the relief sought may have to be denied. No such situation is now presented.

The contention has been made that mandamus would not lie in the event of our holding sections 1036 to 1038 to be invalid. We, cannot adopt that view. Section 1035 of the Revised Laws places the duty of superintending the connecting of premises with the public sewers upon the superintendent of public works. This provision is separable from the rest of the statute and is not involved in the illegal attempt to vest the superintendent with the power of taxation. Should the legislature exercise its power to levy a special tax upon premises connected with the sewers, the supervision of the sewers might still be an appropriate function of the superintendent of public works. Such supervision as it now exists does not extend arbitrary discretion to the superintendent to refuse permits to connect with the sewers. The sewer system of Honolulu was constructed with a view to its being used by property owners, and when owners of premises comply with all legal requirements they are, prima facie, entitled to have their applications for permission to connect granted. Under such circumstances the granting of such applications is a ministerial duty the failure to perform which may be enforced by mandamus. *In re Akwai,* 13 Haw. 239; *Hackfeld* v. *King,* 11 Haw. 5.

The order overruling the demurrer is affirmed and the case is remanded to the circuit judge for further proceedings in conformity with this opinion.

*W. S. Edings* and *P. L. Weaver* (*W. S. Edings* and *Magoon & Weaver* on the briefs) for petitioner.

*E. W. Sutton, Deputy Attorney General* (*Alexander Lindsay. Jr., Attorney General,* with him on the brief) for respondent.