## J. Huff Jones and others v. The Board of Water Commissioners of Detroit.

*Water rates: Taxes: Lien: Use of water.* Water rates paid by consumers, under the statute incorporating the water commissioners of Detroit, are in no sense taxes, and the lien, though enforced in the same way as a lien for taxes, by sale of the premises, is really a lien for an indebtedness, like that enforced on mechanics' contracts, or against ships and vessels; they are but the price paid for water as a commodity, and the use of the water is not compulsory.

*Taxation: Water pipes: General tax: Local assessment.* The taxes provided for by the act of 1869, against vacant lots in front of which water pipes are laid, not being devoted by the statute to any specific purpose, must go, if valid, into the general fund; and not being applied by the statute to expenses or constructions on the street, or in any district within which they are raised, nor proportioned in any way to the cost of the improvement, they cannot come within the class of local assessments.

*Assessments: General tax: Specific tax.* The purposes of this assessment being general, it is to be regarded as a tax in the most general sense, and subject to the rules of law governing taxes. It is not in any sense a specific tax.

*Uniformity in taxation: Cash value: Frontage.* The constitutional requirement of uniformity in taxation, according to the cash value of the property, applies to such assessments; and an assessment upon a specified class of lots only, laid upon their frontage on the street, is beyond the power of the legislature to authorize.

*Heard June 7. Decided June 13.*

Appeal in Chancery from Superior Court of Detroit.

*Baker & Thompson* and *C. A. Kent*, for complainants.

*Theodore Romeyn*, for defendants.

CAMPBELL, J:

The only question presented by the record in this case is whether assessments made by the water commissioners of Detroit against property not using water are valid.

The defendant is a corporation auxiliary to the city of Detroit, and in charge of its water works. By the original act of incorporation the water commissioners were empowered from time to time to "cause to be assessed the water

34 MICH.—35.

rate to be paid by the owner or occupant of each house or other building having or using water, upon such basis as they shall deem equitable; and such water rate shall become a continuing lien, until paid. upon such 'house or .other building, and upon the lot or lots upon which such house or other building is situated."—*Act of February 14, 1853, Sec. 10.* This claim could be enforced by shutting off the water or by collection proceedings, as well as by a sale in the form and with the incidents of a city tax sale.

On the 5th of April, 1869, an amendatory act of the legislature authorized and required the commissioners to "assess upon each and every lot in the city of Detroit, in front of which water pipes are laid, an annual tax or assessment of three cents per lineal foot of the frontage of such lot or lots, and which do not pay water rates, which shall be a lien upon such lot or lots, and may be collected from the owner or owners of such lot or lots, or by sale thereof in the same manner as is provided by sections nine and ten in reference to water rates: *Provided,* That no such lot or lots shall be so taxed on more 'than one front; and where such pipes are laid across more than one front of any lot, only the shortest front shall be estimated in making such assessment."

Under this statute, and corresponding by-laws, taxes were levied on the lands of complainants, which were advertised for sale, and the sale was enjoined by the superior court of Detroit. An appeal is brought from that action.

It is claimed that these taxes are invalid, and the law under which they were levied unconstitutional.

In order to understand the precise condition of this subject, it is necessary to examine somewhat into the legislation.

The principal expense of building and enlarging the water works has always been laid upon the city of Detroit, by whose funds or credit the money has been raised. The water commissioners, until the law of 1869, were confined in their own procedure to raising money from water rates charged for the use of water. These were the 'primary resources for paying current expenses, and expenses for the

extension of the works, and whenever savings were made to the extent of five hundred dollars, they were to be invested in a sinking fund to redeem bonds. The law of 1869 is the first attempt to enable the board to raise money by rates or assessments except from water consumers.

The water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity, just as similar rates are payable to gas companies, or to private water works, for their supply of gas or water. No one can be compelled to take water unless he chooses, and the lien, although enforced in the same way as a lien for taxes, is really a lien for an indebtedness, like that enforced on mechanics' contracts, or against ships and vessels. The price of water is left to be fixed by the board in their discretion, and the citizens may take it or not as the price does or does not suit them.

The outlay of the board consists in the reservoirs and machinery for obtaining and storing water, and the pipes through which it is distributed. This property and material is authorized to be sufficient to "furnish a full supply of water for public and private purposes."—*Sec. 7.* These public purposes include "reservoirs, jets and fire hydrants, at such localities in said city as they may deem expedient," and "fountains in the public squares, or such other public grounds of said city as they shall deem expedient," with the consent of the council.

There is nothing in the amendatory act of 1869 to devote the taxes against persons not using water to any specific purpose, and, if valid, they must go, like the water rates, into the general fund of the commissioners, to be used for any of the lawful purposes and expenses of the commission. The amount is not applied to expenses or constructions on the street or in any district within which it is raised, and is not proportioned in any way to the cost of any such outlays.

The burdens levied cannot come within the class of local assessments whereby local expenditures for certain purposes are divided among the various premises in the district bene-

fited.    Such a distribution was not designed by the statute, and, whether legal or not, would be somewhat remarkable in the case of water works, where the pipes derive all their value from the distribution of water from the reservoir or works, which may be remote, and possibly beyond the city itself, as they are authorized to be under the statutes concerning Detroit.    Moreover, a large part of the property within any water district, and nearly all of it in the most important districts, is exempted from this tax, which does not apply to premises occupied by consumers of water.    The tax must be regarded as something very different from a local assessment.

Its purposes being general, it is to be regarded as a tax in the most general sense of that word, and subject to the rules of law which govern taxes.    It is not in any sense a specific tax, and this is not claimed.    Specific taxes are laid upon certain classes of business or pursuits.    But these are laid only upon persons and property not holding the relation of water consumers dealing with the commissioners. It would be absurd to call these specific taxes.

Being neither local assessments nor specific taxes, they must be governed by the constitutional rule which requires that there shall be uniform rules of taxation except on property paying specific taxes, and that assessments shall be on property at its cash value.—*Art. XIV.,* §§ *11, 12.*    The probability is, that this property already pays its share of the general taxes of the city of Detroit required to supply means for defraying the water works debt, and levied on a cash valuation; but whether this be so or not, the present tax is not levied on any principle which is maintainable for ordinary taxation.

It is a serious question how far the legislature can fix a definite and unchangeable amount of taxation for purely local purposes coming within no purpose in which the state or the public has any concern.    While the state is concerned in education and in those matters which relate to the peace and good order of the community, it has no very

direct interest in local improvements.     But without determining where the lines may lie, it is very clear that the present burdens imposed on parties,—not as a percentage on property, but as a charge on a limited portion of the property, and that charge laid upon its frontage on the streets,—are beyond the powers of the legislature under the rules applicable to general taxation for any purpose, whether local or of universal concern.

We do not think it worth while to discuss all of the interesting questions presented on the argument, as there is no probability that most of them will ever require judicial attention again.     The decree is affirmed, with costs.

The other Justices concurred.