KOWALSKI v CITY OF LIVONIA

Docket No. 255623. Submitted July 12, 2005, at Lansing. Decided July 26, 2005, at 9:20 a.m. Leave to appeal sought.

Kathy Kowalski and others brought an action in the Wayne Circuit Court against the city of Livonia, challenging the legality of the city's five percent franchise fee on local cable television companies, which fee is passed through to the customers of the cable companies, on the basis that the fee is a tax that is unlawful without voter approval under the Headlee Amendment, Const 1963, art 9, § 31. The court, Edward Thomas, J., granted summary disposition for the defendants, ruling that the plaintiffs lacked standing, that the federal Cable Communications Policy Act, 47 USC 521 *et seq.*, preempted the Headlee Amendment, and that the cable franchise fee does not constitute a tax for the purpose of the Headlee Amendment. The plaintiffs appealed.

In separate opinions, the Court of Appeals *held*:

The circuit court decision must be affirmed.

Affirmed.

O'CONNELL, P.J., stated that the circuit court was correct that the franchise fee does not constitute a tax, so voter approval is not required for the imposition of the fee. A fee, in contrast to a tax, serves a regulatory purpose rather than a revenue-raising purpose, is proportionate to the necessary costs of the service, and is voluntary in nature. The franchise fee involved in this case satisfies all three criteria. Therefore, it is not a tax for which the Headlee Amendment requires voter approval.

BORRELLO, J., concurred in the result only.

SCHUETTE, J., concurring in the result only, stated that the one-year period of limitations of MCL 600.308a(3) applies to the plaintiffs' cause of action and is dispositive of this case.

*Charfoos & Christensen, P.C.* (by *David R. Parker*), for the plaintiff.

*Sean P. Kavanagh*, City Attorney, and *Cathryn K. White*, Chief Assistant City Attorney, and *Cummings, McClorey, Davis & Acho, PLC* (by *T. Joseph Seward*), for the defendant.

Before: O'CONNELL, P.J., and SCHUETTE and BORRELLO, JJ.

O'CONNELL, P.J. Plaintiffs[1] appeal as of right the trial court's order granting defendant summary disposition based on its holdings that plaintiffs lacked standing, that the federal Cable Communications Policy Act, 47 USC 521 *et seq.*, preempted the Headlee Amendment, and that the cable "franchise fees" did not constitute a "tax" for purposes of the § 31 of the Headlee Amendment. Because we find the third issue dispositive, we do not reach the others. In this case, we conclude that the "franchise fees" do not constitute a tax and, therefore, we affirm the lower court decision.

This case arose as part of a statewide challenge against several municipalities that impose five percent "franchise fees" on local cable carriers as a condition to their operation. See, e.g., *Morgan v City of Grand Rapids*, 267 Mich App 513; 705 NW2d 387 (2005). The source of the challenge was not the providers who paid the five percent charge directly, however, but the cable subscribers who sought to strike down the charge as a new local tax that was unlawful without voter approval. Const 1963, art 9, § 31. Unlike in the other cases, defendant immediately filed a motion for summary disposition, rather than an answer with affirmative defenses, and did not assert the issue of the statute of limitations.

---

[1] The named plaintiffs were never granted class certification below, so the term "plaintiffs" refers to them exclusively, and, because there is no class, our holding affects all the claims and disposes of the entire suit.

Plaintiffs argue that the trial court erred when it determined that the charge was a "fee" rather than a "tax" for purposes of § 31. Although we would categorize the charge as the contract price for a municipally owned commodity, we agree with the trial court that the charge does not fit within the definition of a "tax" in this case. We review de novo a trial court's decision to grant summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

Because the Headlee Amendment only proscribes the imposition of new "taxes," defendant did not violate the amendment if it can establish that the charge here is a "user fee" or some other type of exaction that does not qualify as a "tax." *Bolt v City of Lansing*, 459 Mich 152, 158-159; 587 NW2d 264 (1998). The only types of exactions recognized in *Bolt* were assessments, taxes, and user fees. Although we would recognize a fourth type, contract price, we need not construct any new legal framework in this case because plaintiffs have failed to demonstrate that defendant charged more than a "fee" in the year preceding their lawsuit.

In *Bolt*, our Supreme Court provided the following three criteria for evaluating whether a charge qualified as a "fee" or a "tax." First, "a user-fee must serve a regulatory purpose rather than a revenue-raising purpose." *Id.* at 161. Second, the user fee "must be proportionate to the necessary costs of the service." *Id.* at 161-162. Third, a user fee is generally voluntary in nature. *Id.* at 162.

Addressing the criteria in reverse order, plaintiffs accurately and unreservedly admit that the cable "franchise fees" are voluntary. This is true whether viewed from the perspective of the subscriber or the supplier, because each pays the charge in exchange for a service:

the provider pays the city for its valuable franchise and the subscriber, in turn, pays the supplier for the privilege of receiving cable programming. Therefore, the "franchise fee" is a voluntary payment and consideration in exchange for a commodity.[2]

Next, the budget information for defendant reflected that the franchise fees were insufficient from 2001 to 2003 to support its cable expenditures, and that defendant ran the cable fund at an annual loss. Nevertheless, plaintiffs argued that the surplus in the cable fund of more than $1 million in 2001 demonstrated that defendant illegally collected an excess "disguised tax" at some point in the fund's history. However, given the fact that a plaintiff may only claim a Headlee violation within one year after its occurrence, MCL 600.308a(3),

---

[2] We would hold that such a contract price for a governmentally owned commodity could never qualify as a "tax" even if the government sets the contract price high enough to glean a substantial profit and generate revenue to replenish its general fund or refund money to its citizenry. We would apply the contract exception in those cases where the commodity is generally obtainable on the open market, the government is acting in its proprietary role, the benefit received by the government is part of a bargained exchange, and the price imposed has *de minimis* effect on commerce outside the government's jurisdiction. *Jones v Detroit Water Comm'rs*, 34 Mich 273, 275 (1876) (holding that "water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity, just as similar rates are payable to gas companies, or to private water works, for their supply of gas or water"); see also *Coleman v Kootsillas*, 456 Mich 615, 575 NW2d 527 (1998) (holding that operation of a landfill by a city was intended to raise revenue and fit within the city's proprietary function); also compare *City of Dallas v Federal Communications Comm*, 118 F3d 393, 397-398 (CA 5, 1997), and *City of St Louis v Western Union Telegraph Co*, 148 US 92, 97-100; 13 S Ct 485; 37 L Ed 380 (1893) (each holding that use of rights-of-way was a kind of rent), with *Hawarden v US West Communications, Inc*, 590 NW2d 504, 509 (Iowa, 1999), and *AT & T v Arlington Hts*, 156 Ill2d 399, 407-408; 620 NE2d 1040 (1993) (holding that "rent" charged intermunicipal wire-service providers for their use of a municipality's rights-of-way were cost prohibitive).

it would distort the purpose of the limitations period if we scanned the entire life of the cable fund searching for a surplus year. Besides, plaintiffs have failed to present any evidence that the surplus resulted from the collection of franchise fees or that, in light of the current deficits, those fees will not eventually fund cable services. Therefore, plaintiffs failed to demonstrate that "franchise fee" revenue was disproportionately high compared to the expense associated with cable services during the one-year period before they filed suit.

Finally, although plaintiffs also claim that the franchise fees generated $30,416 for Livonia's general fund, the budget summary, annual budgets, and balance sheets they submitted do not appear to support the claim. Furthermore, in light of the cable fund's other expenses exceeding $700,000 and "franchise fee" revenue of more than $600,000, the transfer of $30,416 into the general fund does little to tip the scales in favor of finding that the five percent charge constitutes a "tax." See *Bolt, supra* at 167 n 16 (stating that the three criteria should be considered together rather than in isolation).

Affirmed.

BORRELLO, J. I concur in the result only.

SCHUETTE, J. (*concurring in the result only*). I would affirm the decision of the trial court. In contrast to the analysis of my distinguished colleague Judge PETER D. O'CONNELL, I believe this Court's decision in *Morgan v City of Grand Rapids,* 267 Mich App 513; 705 NW2d 387 (2005), is dispositive of this case.

The one-year statute of limitations, MCL 600.308a(3), as explained in *Taxpayers Allied for Con-*

*stitutional Taxation v Wayne Co*, 450 Mich 119, 124-125 n 7; 537 NW2d 596 (1995), applies to the plaintiffs' cause of action in this matter.