# STATE OF MICHIGAN

# COURT OF APPEALS

---

JEFFREY TRANTHAM and ALL OTHERS
SIMILARLY SITUATED,

        Plaintiff-Appellant,

v

STATE DISBURSEMENT UNIT,
DEPARTMENT OF HEALTH AND HUMAN
SERVICES, and OFFICE OF CHILD SUPPORT,

        Defendant-Appellees,

and

MACOMB COUNTY, OAKLAND COUNTY,
and WAYNE COUNTY,

        Amici Curiae.

FOR PUBLICATION
November 10, 2015
9:00 a.m.

No. 322289
Court of Claims
LC No. 13-000162-MM

---

Before: GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ.

GADOLA, P.J.

Plaintiff, Jeffrey Trantham, individually and on behalf of other individuals similarly situated, filed an action in the Court of Claims against defendants State Disbursement Unit (SDU), Department of Health and Human Services (DHHS), and Office of Child Support (OCS), claiming that the $3.50 monthly charge collected by the Friend of the Court (FOC) from child and spousal support payments pursuant to MCL 600.2538(1) constituted an unconstitutional taking and violated substantive due process. Plaintiff appeals as of right the May 30, 2014 opinion and order of the Court of Claims, granting defendants' motion for summary disposition

-1-

under MCR 2.116(C)(8) (failure to state a claim).[1] We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff has paid child support through the Oakland County FOC since September 2005. The DHHS, through the OCS, oversees and administers Michigan's child support program. In accordance with the requirement of 42 USC 645b, which mandates that each state create a centralized state disbursement unit to collect and distribute child support payments, the SDU collects and distributes child support and spousal support payments in Michigan. Plaintiff asserted that 74% of the support payments are made through income withholding from a payer's paycheck, similar to the way in which taxes and insurance premiums are deducted from an employee's paycheck.

Plaintiff filed this class action complaint pursuant to MCR 3.501 on behalf of all persons who (1) "were subject to an income withholding order for child or spousal support" and (2) "had or will have the Fees imposed under [MCL 600.2538(1)] withdrawn from their salaries, wages or other source of income in the year proceeding [sic] the filing of this suit and/or during the pendency of this suit." Specifically, plaintiff challenged the $3.50 monthly charge collected by the FOC from all persons who make payments of child and spousal support through the FOC system. Plaintiff asserted that the monthly fee was not a fair approximation of the costs incurred by defendants in providing services to the payers. Thus, plaintiff alleged that the monthly fees constituted an unconstitutional taking of private property without just compensation (count I) and violated substantive due process (count II). Plaintiff sought in part to stop collection of the fees, to have MCL 600.2538 declared unconstitutional, and the return of the purportedly improper fees into a common fund for the benefit of plaintiff and those similarly situated.

Defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(8), arguing that the fees charged under MCL 600.2538 were not an unconstitutional taking because they were user fees and did not violate due process. Plaintiff filed a brief in opposition. The Court of Claims granted defendant's motion for summary disposition, concluding that the fee did not violate the Takings Clause or substantive due process. With regard to the Takings Clause, the Court of Claims reasoned that (1) "there is no factual development that would lead to the conclusion that the $3.50 monthly fee at issue . . . is so excessive that it is not a user fee," (2) it was not material whether payers were forced to use the system, (3) even if plaintiff does not use the available services for which a portion of the fees fund, he "benefits from the existence of the Friend of the Court system and the availability of services it provides should he need them," and (4) the distinction between a user fee versus a taking does not depend on where the money is applied. Accordingly, the Court of Claims concluded that the Legislature's decision in

---

[1] On December 26, 2014, this Court granted Macomb, Oakland, and Wayne Counties' motion for leave to file an amicus curiae brief. *Trantham v State Disbursement Unit*, unpublished order of the Court of Appeals, entered December 26, 2014 (Docket No. 322289).

MCL 600.2538 to disburse part of the monthly fee to the Attorney General and the State Treasurer for the state court fund did not warrant judicial intervention. In rejecting plaintiff's substantive-due-process claim, the Court of Claims reasoned:

> The Legislature has determined that it is appropriate to collect fees from individuals who are part of the Friend of the Court system to provide financial support for services that are not reimbursable under Title IV-D. As previously explained, individuals, such as plaintiff, benefit from the existence of the system and the availability of its services should they be needed. The legislation is rationally related to a legitimate government interest in supporting the services. There is no factual development that could possibly result in a determination that [the] Legislature's judgment to collect the $3.50 a month fee is so arbitrary that it fails the rational basis test.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant of summary disposition. *Jimkoski v Shupe*, 282 Mich App 1, 4; 763 NW2d 1 (2008). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint by the pleadings alone." *Wilson v King*, 298 Mich App 378, 381; 827 NW2d 203 (2012). The motion should be granted if the party opposing the motion failed to state a claim on which relief can be granted. *Wy Chiropractic Health Clinic, PC v Auto-Owners Ins Co*, 308 Mich App 389, 391; 864 NW2d 598 (2014). "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the plaintiff." *Wilson*, 298 Mich App at 381. A motion under MCR 2.116(C)(8) may only be granted if "the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id.* (quotation marks and citations omitted).

"This Court reviews de novo a challenge to the constitutionality of a statute." *IME v DBS*, 306 Mich App 426, 433; 857 NW2d 667 (2014). "Statutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 516; 857 NW2d 529 (2014) (quotation marks and citation omitted). "The party challenging the constitutionality of legislation bears the burden of proof." *Mich Soft Drink Ass'n v Dep't of Treasury*, 206 Mich App 392, 401; 522 NW2d 643 (1994).

### B. FRIEND OF THE COURT SERVICES AND FUNDING

The federal government appropriates money "[f]or the purpose of enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living, locating noncustodial parents, establishing paternity, obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part to all children . . . for whom such assistance is requested." 42 USC 651. In turn, the federal government requires state governments to establish state programs and reporting procedures related to child support and the establishment of paternity. 42 USC 651 to 669b [Title IV-D]. Once a state fulfills these requirements, the federal government will

-3-

reimburse the state for 66% of the expenses related to child support enforcement services required under Title IV-D.  42 USC 655(a)(1) and (a)(2)(C).

In Michigan, the OCS is the state agency authorized to administer Title IV-D services.  MCL 400.232; MCL 400.233.  Through the FOC, the OCS coordinates the provision of services provided under Title IV-D.  MCL 400.233(o).  Child support services provided in Michigan as required by Title IV-D include in part (1) establishing paternity, (2) establishing, modifying, or enforcing child support obligations, (3) locating parents, and (4) cooperating with other states to enforce support orders when one parent lives outside of the state.  42 USC 654.  See also MCL 400.233 (listing the duties of OCS).

The Friend of the Court Act, MCL 552.501 *et seq*., "describe[s] the powers and duties of the [FOC] . . . ."  MCL 552.501(2).  The FOC also provides services that are not required or reimbursable under Title IV-D.  For instance, the FOC provides services related to parenting time and custody in domestic relations matters, MCL 552.505; MCL 552.511b; MCL 552.641, investigating and issuing a report regarding child custody or parenting time, MCL 552.505(1)(g), and enforcing domestic relations orders when a written complaint is received regarding the violation of an order, MCL 552.511b.

Under MCL 600.2538(1), persons who are required to make support payments through the FOC system pay a monthly charge of $3.50 for child support collection.  MCL 600.2538 provides the following:

> (1) *For services provided that are not reimbursable under the provisions of part D of title IV of the social security act, 42 USC 651 to 669b*, every person required to make payments of support or maintenance to be collected by the friend of the court or the state disbursement unit shall pay a fee of $3.50 per month for every month or portion of a month that support or maintenance is required to be paid.  The fee shall be paid monthly, quarterly, or semiannually as required by the friend of the court.  The friend of the court shall provide notice of the fee required by this section to the person ordered to pay the support and that the fee shall be paid monthly or as otherwise determined by the friend of the court.  The friend of the court or SDU shall transmit each fee collected under this section as follows:

> (a) Two dollars and twenty-five cents to the appropriate county treasurer for deposit into the general fund of the county to be used to fund the provision of services by the friend of the court that are not reimbursable under part D of title IV of the social security act, 42 USC 651 to 669b.

> (b) For fees assessed on or after October 1, 2003, 25 cents to the state treasurer for deposit in the fund created in subsection (4).

(c) One dollar to the state treasurer for deposit in the state court fund created in [MCL 600.151a].[2]

(2) A court may hold a person who fails or refuses to pay a service fee ordered under subsection (1) in contempt.

(3) The SDU is responsible for the centralized receipt and disbursement of support. An office of the friend of the court may continue to receive support and fees.

(4) An attorney general's operations fund is created within the state treasury. The state treasurer may receive money or other assets from any source for deposit into the fund. The state treasurer shall direct the investment of the fund. The state treasurer shall credit to the fund interest and earnings from fund investments. Money in the fund at the close of the fiscal year shall remain in the fund and shall not lapse to the general fund. *The department of attorney general shall expend money from the fund, upon appropriation, for operational purposes.*

(5) As used in this section, "state disbursement unit" or "SDU" means the entity established in section 6 of the office of child support act, 1971 PA 174, MCL 400.236. [MCL 600.2538 (emphasis added).]

Thus, under MCL 600.2538(1), the $3.50 monthly charge is designed to fund only services that are not reimbursable under Title IV-D.[3] Of the $3.50 collected by the FOC, (1) $2.25 is sent to

---

[2] The state court fund exists to fund trial court operations across the state. The $1.00 charge imposed under MCL 600.2538(1)(c) is one of several sources of revenue for the fund. See MCL 600.151a(2). MCL 600.151a(7) provides that money deposited into the state court fund shall be distributed as follows:

(a) To the state court administrator for the operational expenses of trial courts as provided in [MCL 600.151b], $1,600,000.00 with the balance of the fund being distributed according to subdivisions (b) to (d).

(b) To the state court administrator for the operational expenses of trial courts as provided in [MCL 600.151b], 76% of the balance of the fund.

(c) For indigent civil legal assistance to be distributed under [MCL 600.1485], 23% of the balance of the fund.

(d) To the state court administrator for oversight, data collection, and court management assistance by the state court administrative office, 1% of the balance of the fund.

[3] The Attorney General contends that the funds raised by the monthly fee can be used to defray the state's share of Title IV-D services. This position is at odds with the language of

local counties to fund FOC services that are not reimbursable under Title IV-D, MCL 600.2538(1)(a), (2) $0.25 is sent to the state treasurer for deposit into the attorney general's operations fund, MCL 600.2538(1)(b) and (4), and (3) $1.00 is sent to the state treasurer for deposit into the state court fund, MCL 600.2538(1)(c).

Generally, the FOC must "open and maintain a friend of the court case for a domestic relations matter." MCL 552.505a(1). In limited circumstances when the statutory provisions of MCL 552.505a(2) are met, the parties to a domestic relations matter may request that the FOC not open a file on their case. Specifically, MCL 552.505a(2) provides the following:

> (2) The parties to a domestic relations matter are not required to have a friend of the court case opened or maintained for their domestic relations matter. With their initial pleadings, the parties to a domestic relations matter may file a motion for the court to order the office of the friend of the court not to open a friend of the court case for the domestic relations matter. If the parties to a domestic relations matter file a motion under this subsection, the court shall issue that order unless the court determines 1 or more of the following:

> (a) A party to the domestic relations matter is eligible for title IV-D services because of the party's current or past receipt of public assistance.

> (b) A party to the domestic relations matter applies for title IV-D services.

> (c) A party to the domestic relations matter requests that the office of the friend of the court open and maintain a friend of the court case for the domestic relations matter, even though the party may not be eligible for title IV-D services because the domestic relations matter involves, by way of example and not limitation, only spousal support, child custody, parenting time, or child custody and parenting time.

> (d) There exists in the domestic relations matter evidence of domestic violence or uneven bargaining positions and evidence that a party to the domestic relations matter has chosen not to apply for title IV-D services against the best interest of either the party or the party's child.

> (e) The parties have not filed with the court a document, signed by each party, that includes a list of the friend of the court services and an acknowledgment that the parties are choosing to do without those services.

---

MCL 600.2538(1), which provides that the fee is to cover services "that are not reimbursable" under Title IV-D. If a service is "reimbursable," (i.e., capable of being reimbursed) regardless of the rate of reimbursement from the federal government, the fee is not available to pay for that service. Rather, under the plain language of the statute, the fee is paid only for services that are "not reimbursable" under Title IV-D.

-6-

Similar requirements govern a party's request to close a friend of the court case after it is opened. MCL 552.505a(4)(a) through (g). If an FOC case is not open on a domestic support matter, the payer is not subject to the monthly charge set forth in MCL 600.2538(1).

## C. USER FEES

Plaintiff first argues that the monthly $3.50 charge under MCL 600.2538(1) is not a valid user fee, and so constitutes an unconstitutional taking of private property for public use. The United States Constitution, US Const, Am V, and the Michigan Constitution, Const 1963, art 10, § 2, both "prohibit the taking of private property for public use without just compensation." *Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239, 261; 792 NW2d 781 (2010). "The term 'taking' can encompass governmental interference with rights to both tangible and intangible property." *AFT Mich v Michigan*, 497 Mich 197, 218; 866 NW2d 782 (2015). However, "[i]t is beyond dispute that taxes and user fees . . . are not takings." *Koontz v St Johns River Water Mgt Dist*, ___ US ___, ___; 133 S Ct 2586; 186 L Ed 2d 697 (2013) (quotation marks and citation omitted).

In *United States v Sperry Corp*, 493 US 52, 54; 110 S Ct 387; 107 L Ed 2d 290 (1989), a federal statute required "the Federal Reserve Bank of New York to deduct and pay into the United States Treasury a percentage of any award made by the Iran-United States Claims Tribunal in favor of an American claimant before remitting the award to the claimant." Sperry and the Iranian government reached a settlement without the Tribunal's involvement, but they filed an application to have the $2.8 million settlement entered as an award of the Tribunal because it allowed plaintiff to get paid from Iranian assets held at the Federal Reserve Bank. *Id.* at 56-57. The federal statute required a deduction of 1½% of the first $5 million and 1% of any awarded amount over $1 million, paid to the United States Treasury. *Id.* at 58. Sperry argued that the charge constituted an unconstitutional taking. *Id.*

The Supreme Court held that the charge was a valid user fee and therefore did not violate the Takings Clause. *Sperry Corp*, 493 US at 63-64. The Court noted that a user fee must be a "fair approximation of the cost of benefits supplied," but it need not be "precisely calibrated to the use that a party makes of Government services." *Id.* at 60 (quotation marks and citation omitted). In reaching its conclusion, the Court recognized that when the government "applies user charges to a large number of parties, it probably will charge a user more or less than it would under a perfect user-fee system." *Id.* at 61. So long as the fee was not "clearly excessive," no constitutional violation occurred. *Id.* at 62.

Sperry complained that the statute forced it to pay for procedures that it would have preferred to avoid, but the Court concluded that "a reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services." *Sperry Corp*, 493 US at 63. Despite the fact that Sperry's award was more the result of private negotiations than Tribunal procedures, the Court held that Sperry could be "required to pay a charge for the availability of the Tribunal even if it never actually used the Tribunal" because Sperry received a benefit in the sense that the Tribunal's services were available for its use. *Id.*

Michigan courts have applied similar reasoning when identifying the nature of monetary exactions by government authorities, particularly when drawing distinctions between fees and

taxes. "Generally, a 'fee' is 'exchanged for a service rendered or a benefit conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit.' " *Bolt v City of Lansing*, 459 Mich 152, 161; 587 NW2d 264 (1998), quoting *Saginaw Co v John Sexton Corp*, 232 Mich App 202, 210; 591 NW2d 52 (1998). "A 'tax,' on the other hand, is designed to raise revenue." *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 665; 697 NW2d 180 (2005) (quotation marks and citation omitted). Fees charged by a government entity must be reasonably proportionate to the direct and indirect costs of providing services for which the fee is charged. *Kircher v Ypsilanti*, 269 Mich App 224, 231-232; 712 NW2d 738 (2005). A fee is presumed reasonable unless it is facially or evidently so " 'wholly out of proportion to the expense involved' " that it " 'must be held to be a mere guise or subterfuge to obtain the increased revenue.' " *Merrelli v St Clair Shores*, 355 Mich 575, 584; 96 NW2d 144 (1959), quoting *Vernor v Secretary of State*, 179 Mich 157, 168, 170; 146 NW 338 (1914).

A fee confers a benefit on the particular persons who pay the fee, while a "tax is designed to raise revenue for general public purposes." *Graham v Kochville Twp*, 236 Mich App 141, 151; 599 NW2d 793 (1999). To prove a monetary exaction is a tax, it is insufficient to show that the charge is larger than the costs it would defray. *City of Dearborn v Mich State Tax Comm*, 368 Mich 460, 472; 118 NW2d 296 (1962). Rather,

> what is a reasonable fee must depend largely upon the sound discretion of the legislature, having reference to all the circumstances and necessities of the case. It will be presumed that the amount of the fee is reasonable, unless the contrary appears upon the face of the law itself, or is established by proper evidence. [*Id.* (quotations marks and citation omitted).]

The Court of Claims did not clearly err by concluding that the $2.25 portion of the monthly charge sent to local counties to fund FOC services that are not reimbursable under Title IV-D, MCL 600.2538(1)(a), and the $1.00 sent to the state treasurer for deposit into the state court fund, MCL 600.2538(1)(c), are valid user fees associated with plaintiff's use of the circuit court and the FOC system to collect child support payments. Plaintiff cannot plausibly deny that he benefits directly from the existence of the FOC and its associated services. Moreover, the FOC is an integral part of the circuit court in the judicial circuit it serves. MCL 552.503; see also *Morrison v Richardson*, 198 Mich App 202, 212; 497 NW2d 506 (1992). It is simply not the case that the government arbitrarily and without warning found plaintiff and began to exact $3.50 from his monthly wages. Rather, he pays this amount solely because he has an open FOC case in one of the circuit courts of this state. Plaintiff imposes costs on this system that he should reasonably bear, rather than the public at large, in return for the services that the court and the FOC provide to the users of that system, including plaintiff. Plaintiff and his dependents benefit from the existence, and his use of, this carefully crafted system.

The fact that plaintiff does not use every service offered by the FOC is not dispositive, *Sperry Corp*, 493 US at 63, and we are not convinced that the portion of the $3.50 charge disbursed under MCL 600.2538(1)(a) and (c) is unreasonable or disproportionate to the direct and indirect costs of the government services plaintiff and others with open FOC cases receive.

In contrast, we fail to see any relationship between the benefits plaintiff receives through his participation in the FOC system and the $0.25 portion of the monthly charge going toward

the attorney general's operations fund. MCL 600.2538(1)(b) and (4). Rather, it is evident from the face of MCL 600.2538 that the $0.25 charge is designed to raise revenue for the general operating expenses of an unrelated government office. To the extent the Attorney General's office claims affiliation through its enforcement of support orders, those services are reimbursable under Title IV-D, 42 USC 654, and are therefore explicitly excluded from the purpose of the monetary exaction in MCL 600.2538.[4] See MCL 600.2538(1) (stating that the $3.50 charge is designed to pay for services "that are not reimbursable under the provisions of part D of title IV of the social security act, 42 USC 651 to 669b"). In any event, the portion of the fee paid to the Attorney General is not restricted to use in the child support arena, but can be used for general operating expenses of the Attorney General's office as the legislature may see fit in the annual appropriations process.

It is therefore facially apparent from MCL 600.2538 that the $0.25 charge going to the attorney general's operations fund is a revenue raising measure that bears no relationship to plaintiff's use of the FOC system. In light of its predominant revenue raising function, we conclude that the $0.25 charge pursuant to MCL 600.2538(1)(b) and (4) is a tax. See *Wheeler*, 265 Mich App at 665; see also *Merrelli*, 255 Mich at 584. Although plaintiff argues that imposition of the $3.50 charge constitutes an unconstitutional taking, "[i]t is beyond dispute that taxes and user fees . . . are not takings." *Koontz*, ___ US at___ (quotation marks and citation omitted).

On appeal, plaintiff suggests that a conclusion that any portion of the fee under MCL 600.2538 is actually a tax would raise problems under the Title-Object Clause and the Distinct-Statement Clause of the Michigan Constitution. Const 1963, art 4, § 24 and § 32. Neither the parties nor the Court of Claims addressed these issues below. Therefore, we believe a remand is necessary to provide the parties with a sufficient opportunity to develop a record on the constitutionality of the $0.25 tax imposed under MCL 600.2538(1)(b).

### D. DUE PROCESS

Plaintiff also argues that the $3.50 charge provided under MCL 600.2538 violates substantive due process. The Due Process Clauses of the United States and Michigan Constitutions provide that no one may be deprived of property without the due process of law. US Const, Amend XIV, § 1; Const 1963, art 1, § 17. The party challenging the facial constitutionality of an act "must establish that no set of circumstances exists under which the act would be valid." *Bonner v Brighton*, 495 Mich 209, 223; 848 NW2d 380 (quotation marks and citation omitted). "[T]he substantive component protects against the arbitrary exercise of governmental power." *Id*. at 224. The test for determining a substantive due process claim is whether the legislation bears a reasonable relation to a permissible legislative objective. *Wells*

---

[4] Indeed, accompanying his response to defendants' motion for summary disposition, plaintiff attached an excerpt of the Michigan IV-D Child Support Manual from the Department of Health and Human Services stating that the $0.25 charge "is considered a IV-D expense," which "is used to reimburse the Michigan Attorney General for services provided that are reimbursable under Part D of Title IV of the Social Security Act, [42 USC 651 to 669b]."

*Fargo Bank, NA v Cherryland Mall Ltd Partnership (On Remand)*, 300 Mich App 361, 380; 835 NW2d 593 (2013). "[I]f a statute can be upheld under any plausible justification offered by the state, or even hypothesized by the court, it survives rational-basis scrutiny." *Id*. at 381 (quotation marks and citation omitted). In addition, "a rational basis review does not test the wisdom, need, or appropriateness of the statute." *The Cadle Co v Kentwood*, 285 Mich App 240, 257; 776 NW2d 145 (2009).

The Court of Claims did not clearly err by concluding that the $3.50 monthly charge satisfied substantive due process standards. MCL 600.2538 imposes a charge for a legitimate government purpose: to fund the FOC and court systems and raise revenue for the attorney general's operations. The class of persons subject to the charge consists of every person who is required to make payments of support or maintenance through the FOC or the SDU. MCL 600.2538(1). It is reasonable for the FOC service participants, who impose specific costs on the government and society, to pay for the availability services from the FOC, the trial court, and the attorney general. See *Dawson v Secretary of State*, 274 Mich app 723, 739; 739 NW2d 339 (2007) (opinion by WILDER, J.) (concluding that a classification scheme for assessing driver responsibility fees from persons convicted of certain offenses was "rationally related to the legitimate governmental purpose of generating revenue from individuals who impose costs on the government and society"). Therefore, we conclude that imposition of the user fees and tax under MCL 600.2538 was not so arbitrary as to violate substantive due process.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/s/ Michael F. Gadola
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly