# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES P. PAGE and RUSSELL DAVIS LEWIS,

      Plaintiffs-Appellants,

v

CITY OF WYANDOTTE, MAYOR OF THE
CITY OF WYANDOTTE, and CITY COUNCIL
OF THE CITY OF WYANDOTTE,

      Defendants-Appellees.

UNPUBLISHED
December 4, 2018

No. 339008
Wayne Circuit Court
LC No. 15-000669-CZ

Before: JANSEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

In this taxpayer action involving challenges to charges for water and cable utilities, plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendants and denying plaintiffs' motion for partial summary disposition. We affirm.

Plaintiffs are current and former residents of the City of Wyandotte (the City). The City provides utility services to its residents, including water, cable television as well as Internet, and electric services. Consumers who receive utility services from the City sign a service agreement with the City. Wyandotte Municipal Services (WMS), which is a City department created by the City Charter, is charged with the management, supervision, and control of the City's utilities, including water and cable services. Under the City Charter and Ordinances, the WMS Commission is empowered to set the water and cable rates for the utilities, and the rates must be sufficient to cover each utility's operating, administrative, and maintenance expenses.

At issue in this case are WMS's expenditures related to providing utility services that specifically include reimbursement of the City's general fund for services provided by the City that benefit the utilities. These expenditures include things like police and fire protection, maintenance of the roads by the department of public works, use of City owned buildings, and the services provided to the WMS by other City departments, including the finance department, information technology, engineering, safety personnel, the City attorney, the City treasurer, payroll, accounts payable, and human resources. Defendants refer to these transfers as a form of "enterprise fund accounting," and plaintiffs appear to agree that, in theory, municipal enterprise funds are a legitimate system of accounting between municipal utilities and city governments. However, plaintiffs disagree that the transfers at issue in this case are enterprise fund transfers to

-1-

reimburse the City for services provided to the WMS. Put another way, plaintiffs claim that the City is improperly using its utilities to generate revenue for the City's general fund to cover City expenses unrelated to the utilities in question.

Particularly in dispute are two transfers to the City's general fund, (1) the water franchise fee (WFF), and (2) the cable franchise fee (CFF). Beginning in 2008, the WMS began transferring a $200,000 flat-rate payment to the City based on a calculation of the reasonable costs the City incurred that are attributable to the water utility; this transfer is known as the WFF. The WFF is not a separate charge to customers, and it is not itemized on the customers' water bills. Indeed, following the implementation of the WFF transfer, consumers' payments for water did not change. In comparison to the WFF, the CFF is payable to the City as a percentage "of the gross revenue of the Cable Television Fund." Like the other fees paid by WMS, the CFF is intended as an administrative fee to reimburse the City for services; it is analogous to the franchise fee that a private company would pay to the City to provide cable services in the City. The WMS has paid the CFF since the inception of the City's cable system in the early 1980s, but it was not until 2011 that the WMS began itemizing the CFF on customers' cable bills as a specific charge. Typically, the rate of the CFF has been 5%, but the City briefly raised the rate to 8% in 2005. The rate returned to 5% in 2007, when the City and WMS signed a franchise agreement relating to the provision of cable services.

Plaintiffs challenged the WFF and the CFF in the trial court on a number of grounds. Relevant to the parties' argument on appeal, plaintiffs claimed that (1) the charges constituted a tax in violation of the Headlee Amendment, Const 1963, art 9, § 31, (2) the City's imposition of the charges breached an implied covenant of good faith and fair dealing in the customer utility service agreements, (3) the charges amounted to an unconstitutional taking, and (4) the charges violated plaintiffs' substantive due-process rights. Defendants filed a motion for summary disposition under MCR 2.116(C)(7), (8), and (10), and plaintiffs filed a cross-motion for partial summary disposition. Following a hearing, the trial court granted defendants' motion for summary disposition and denied plaintiffs' motion for summary disposition. Plaintiffs later filed a motion to amend their complaint to add an express breach of contract claim, but the trial court denied this motion as futile and unduly delayed. Plaintiffs now appeal as of right.

I. STANDARDS OF REVIEW

This Court will review de novo a trial court's decision regarding a motion for summary disposition. *Kelsey v Lint*, 322 Mich App 364, 370; 912 NW2d 862 (2017). We also review de novo questions of law, including constitutional issues. *Aguirre v Dep't of Corrections*, 307 Mich App 315, 320; 859 NW2d 267 (2014). "A trial court's decision on a motion to amend a complaint is reviewed for an abuse of discretion." *Long v Liquor Control Comm*, 322 Mich App 60, 67; 910 NW2d 674 (2017).

Defendants moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). Under MCR 2.117(C)(7), summary disposition is appropriate when, among other reasons, a claim is barred by a statute of limitations. *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 323; 869 NW2d 635 (2015). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the allegations of the pleadings alone." *Hanlin v Saugatuck Twp*, 299 Mich App 233, 239; 829 NW2d 335 (2013).

All well-pleaded allegations must be accepted as true and construed in the light most favorable to the nonmoving party. Only when no factual development could possibly justify recovery should the motion be granted. [*Id*. (citations omitted)]

In comparison, "[w]hen reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all the evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact." *Sisk-Rathburn v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 425, 427; 760 NW2d 878 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## II. HEADLEE

On appeal, plaintiffs argue that the trial court erred by granting defendants' motion for summary disposition and denying summary disposition to plaintiffs regarding plaintiffs' Headlee claim. According to plaintiffs, the undisputed facts demonstrate that the City violated Headlee by levying taxes, in the form of the WFF and the CFF, to raise revenue for the City's general fund. We disagree.

In relevant part, the Headlee Amendment states:

Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon. . . . [Const 1963, art 9, § 31.]

This constitutional provision "invalidates the levying of any new tax not already authorized by law at the time of the ratification of the Headlee Amendment unless voter approval of that tax is secured." *Wheeler v Charter Twp of Shelby*, 265 Mich App 657, 664; 697 NW2d 180 (2005). Application of the Headlee Amendment is "triggered by the levying of a tax." *Jackson Co v City of Jackson*, 302 Mich App 90, 98; 836 NW2d 903 (2013). In contrast, because a "user fee" is not a "tax," a user fee will not implicate the Headlee Amendment. *Id*. at 99.

Generally, a 'fee' is exchanged for a service rendered or a benefit conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit. A 'tax,' on the other hand, is designed to raise revenue. [*Bolt v Lansing*, 459 Mich 152, 161; 587 NW2d 264 (1998) (quotation marks and citation omitted).]

Whether a charge is a tax or a user fee presents a question of law.[1] *Id*. at 158. The party challenging a charge on Headlee grounds bears the burden of establishing the unconstitutionality of the charge. *Jackson*, 302 Mich App at 98. "There is no bright-line test for distinguishing between a valid user fee and a tax that violates the Headlee Amendment." *Bolt*, 459 Mich at 160. However, in *Bolt*, the Court identified three criteria for distinguishing a fee from a tax. *Id*. at 161. Specifically, under *Bolt*, a court should consider:

> (1) whether the charge serves a regulatory purpose rather than operates as a means of raising revenue; (2) whether the charge is proportionate to the necessary costs of the service to which it is related; and (3) whether the payor has the ability to refuse or limit its use of the service to which the charge is related. [*Westlake Transp, Inc v Mich Pub Serv Comm*, 255 Mich App 589, 612; 662 NW2d 784 (2003).]

"[T]hese criteria are not to be considered in isolation, but rather in their totality, such that a weakness in one area would not necessarily mandate a finding that the charge is not a fee." *Wheeler*, 265 Mich App at 665 (quotation marks and citation omitted).

### A. THE WFF

As a preliminary matter, water rates are considered voluntary as property owners can limit, if not refuse, the use of the commodity. See *Bolt*, 459 Mich at 162, quoting *Ripperger v Grand Rapids*, 338 Mich 682, 686; 62 NW2d 585 (1954).

> "The water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity, just as similar rates are payable to gas companies, or to private water works, for their supply of gas or water." *Bolt*, 459 Mich at 162, quoting *Ripperger*, 338 Mich at 686.

Of course, this does not mean that any charge for municipal water utilities, no matter how excessive, *always* constitute a user fee as opposed to a tax. See *Bolt*, 459 Mich at 163 n 12.

---

[1] We note that defendants removed this case to federal court, but it was returned to state court after the Sixth Circuit concluded that the federal courts lacked jurisdiction under the Tax Injunction Act, 28 USC 1341. On appeal, plaintiffs' assertions that the CFF and the WFF constitute taxes are based in part on the Sixth Circuit's finding that the WFF and the CFF constituted a "tax" for purposes of the Tax Injunction Act. See *Page v City of Wyandotte*, 666 F Appx 390, 393-394 (CA 6, 2016). However, the Sixth Circuit's decision makes clear that it was not addressing whether the CFF and the WFF constitute a "tax" for purposes of state law. See *id*. at 392 ("Whether or not the fees are taxes under Michigan law, the definition of the term 'tax' in the Tax Injunction Act is a question of federal law.") (quotation marks and citation omitted). Indeed, the Sixth Circuit's analysis could not control this tax versus fee determination because the Headlee question is a matter of state law, and "this Court is not bound by a federal court decision construing Michigan law[.]" *Allen v Owens-Corning Fiberglas Corp*, 225 Mich App 397, 402; 571 NW2d 530 (1997).

Specifically, "[f]ees charged by a municipality must be reasonably proportionate to the direct and indirect costs of providing the service for which the fee is charged." *Kircher v Ypsilanti*, 269 Mich App 224, 231-232; 712 NW2d 738 (2005). However, "[t]his Court presumes the amount of the fee to be reasonable, unless the contrary appears on the face of the law itself or is established by proper evidence[.]" *Wheeler*, 265 Mich App at 665-666 (quotation marks and citation omitted).

In this case, plaintiffs have simply failed to address whether the amount they pay for water services—as a commodity provided by the City—is reasonably proportionate to the services they receive. Indeed, plaintiffs provide no analysis of the overall charge customers pay for water, and they offer no assertion that the overall charge for water services is disproportionate in relation to the commodity customers receive. To the contrary, the record evidence suggests that the City's charges for water are competitive and, in some cases, lower than other neighboring communities. This Court presumes the amount of a fee to be reasonable, and by failing to address the proportionality of the charge paid for water, plaintiffs have failed to present sufficient evidence to rebut the presumption that the fees charged for water services are reasonable. See *Kircher*, 269 Mich App at 231-232 (recognizing that a fee is "presumed reasonable unless it is facially or evidentially" established to be "wholly out of proportion" to the expense at issue). Absent evidence that the WMS charges an amount that is disproportionate to the direct and indirect costs of providing water, plaintiffs have not shown the levying of a tax as opposed to the collection of a reasonable fee for utility services, and they cannot trigger the application of the Headlee Amendment. See *Wheeler*, 265 Mich App at 665-666; *Kircher*, 269 Mich App at 231-232. Accordingly, plaintiffs have failed to establish a material question of fact on a key element of a Headlee challenge, and consequently the trial court did not err by granting summary disposition to defendants.

## B. THE CFF

Generally speaking, the parties appear to agree that a *private* cable provider can be lawfully subjected to a 5% cable franchise fee, which the cable provider can then pass through to consumers as an itemized charge on the customers' bills. See MCL 484.3306(1)(b); MCL 484.3307(3); see also *Morgan v Grand Rapids*, 267 Mich App 513, 515-516; 705 NW2d 387 (2005); 47 USC 542(b) and (f). As defendants emphasize on appeal, this Court has previously concluded that this type of cable franchise fee does not constitute a "disguised tax," but is instead a payment of a fee in exchange for valuable services. See *Kowalski v City of Livonia*, 267 Mich App 517, 518-521; 705 NW2d 161 (2005). Specifically, applying the *Bolt* criteria, *Kowalski* considered a 5% cable franchise fee and reasoned that, from the perspective of a cable provider, the fee was voluntarily paid as a condition of providing cable in the city and that, from the prospective of cable customers, the fee was paid for the privilege of receiving cable programming. *Id*. Because there was no evidence that the cable franchise fee was excessive when compared with the expenses associated with cable services, this Court also determined that the plaintiff had failed to demonstrate that the franchise fee was disproportionate. *Id*. at 520-521. Under such circumstances, this Court concluded that the plaintiffs could not establish a Headlee violation. *Id*. at 518-521.

In this case, the CFF at issue is also a 5% charge imposed in connection with cable services. However, plaintiffs contend that the CFF at issue in this case is not a true cable

franchise fee—and that *Kowalski* is distinguishable—because the cable provider in this case is WMS, a City department. In other words, plaintiffs argue that there is no reason for the WMS to pay for the right to provide cable or to pay any type of rent for use of rights-of-way in the City because the City already owns these rights and could exercise these rights for free. The distinction plaintiffs seek to draw is unavailing. While it is true that the City owns the public rights-of-way over which the cable system is constructed, *plaintiffs* have no intrinsic right to receive cable services via these rights-of-way without paying a fee for that privilege. See *id*. at 519-520. Indeed, plaintiffs concede as a general proposition that WMS may charge consumers a fee reasonably proportionate to cover its direct and indirect costs of providing services, which according to plaintiffs' expert include things like the costs associated with using municipally-owned property and equipment. This Court has previously likened cable franchise fees to a form of rent, i.e., the price paid for use of a public right-of-way. See *id*. at 520 n 2. And as persons receiving the benefit of the WMS's utilization of these rights-of-way, plaintiffs offer no principled reason why they should not pay a fee for this benefit. Indeed, cable is a commodity, and by accepting services, plaintiffs—like customers paying for private cable services—pay to receive cable programming and, with regard to the CFF in particular, pay for the privilege of receiving cable programming via public rights-of-way. See *Kowalski*, 267 Mich App at 519-520; see also *Bolt*, 459 Mich at 162 ("The water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity, just as similar rates are payable to gas companies, or to private water works, for their supply of gas or water.") (quotation marks and citation omitted). Accordingly, in general terms, the CFF is simply a user fee, voluntarily paid by those who wish to receive cable.

Plaintiffs assert on appeal that the CFF is not a true franchise fee, and in support of this proposition, plaintiffs note that the City Administrator testified at his deposition that the term "franchise fee" was not an accurate descriptor for the CFF. However, the City Administrator also described the CFF as "loosely . . . the same thing" as the cable franchise fee charged to private companies. In any event, regardless of the City Administrator's interpretation of the CFF, the franchise agreement between the City and the WMS clearly described a fee relating to use of the rights-of-way and other incidents to cable operations in a municipality that would apply to a private cable company. Notwithstanding plaintiffs' claims to the contrary, the CFF is analogous to private cable franchise fees.

With regard to the amount of the CFF, plaintiffs have not shown that the CFF in this case is disproportionate. To the contrary, the evidence indicates that the CFF is consistent with the industry standard for cable franchise fees, and that, if anything, the CFF in this case provides more benefit than the average cable franchise fee because it includes services from the City—such as shared personnel and other administrative services—that a private cable company would not enjoy in exchange for a cable franchise fee. In sum, under *Bolt*, the voluntary payment of the CFF in exchange for the privilege of receiving valuable cable services by way of public rights-of-way is a reasonably proportionate user fee, not a tax. See *Kowalski*, 267 Mich App at 518-

520. Accordingly, the trial court did not err by granting defendants' motion for summary disposition.[2]

## III. BREACH OF CONTRACT

Plaintiffs next argue that the trial court erred by granting summary disposition to defendants and denying plaintiffs' motion for summary disposition relating to plaintiffs' claim alleging breach of an implied covenant of good faith and fair dealing. This argument is without merit because the trial court correctly concluded that Michigan does not recognize a cause of action for a breach of the implied covenant of good faith and fair dealing. See *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 133-134; 839 NW2d 223 (2013); *In re Leix Estate*, 289 Mich App 574, 591; 797 NW2d 673 (2010). Accordingly, plaintiffs failed to state a claim on which relief can be granted, and the trial court did not err by granting summary disposition to defendant.

Alternatively, plaintiffs argue that the trial court abused its discretion by denying their motion to amend to add a claim for a breach of express contract terms. Because plaintiffs failed to include this issue in their statement of the questions presented, we need not consider it. See *River Investment Group v Casab*, 289 Mich App 353, 360; 797 NW2d 1 (2010) (recognizing that an issue is waived where the plaintiff failed to state it in the statement of questions presented in its brief on appeal). However, even considering this issue on the merits, we conclude the trial court did not abuse its discretion by denying plaintiffs' motion to add a futile express contract claim.

"An amendment is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Lane v KinderCare Learning Centers, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998). Plaintiffs' proposed express contract claim is premised on the assertion that the City had a contractual right to raise cable "rates," but not to charge the fees itemized on the customers' bills, which include the CFF and a "retransmission fee." However, as commonly understood, the term "rate" refers to "a charge, payment, or price fixed according to a ratio, scale, or standard," such as a charge per unit of a public-service commodity. *Merriam-Webster's Collegiate Dictionary* (11th ed). This common understanding of "rates" encompasses all the costs for cable services, including the CFF and retransmission fee. Indeed, by law, in the cable industry in particular, the "rate" for cable ordinarily includes *all* costs and fees. See 47 CFR 76.946 ("Cable operators that advertise rates for basic service and cable programming service tiers shall be required to advertise rates that include all costs and fees."); see also *Morgan*, 267 Mich App at 514 (noting that private cable providers charged customers "an additional rate" to recoup cable franchise fee paid to city pursuant to agreement). Consistent with the practice of private cable providers, see MCL 484.3307(3); 47 USC 542(b), (f); 47 CFR 76.946, the WMS itemized the CFF and retransmission charges on its bills—not because these

---

[2] On appeal, defendants argue that plaintiffs' Headlee claims are barred by the statute of limitations. The trial court did not address this issue, and given our conclusion that plaintiffs' Headlee claims fail as a matter of law, it is not necessary to review this unpreserved claim. See *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443-444; 695 NW2d 84 (2005).

were separate charges unrelated to the charges for cable services—but to simply provide consumers with an itemized bill that could be compared to bills from private cable companies. Plaintiffs' claim that the CFF and retransmission fee are not a part of their cable rate—subject to adjustment by the City under the terms of the utility service agreements—is not persuasive, and the trial court correctly recognized that an amendment to the complaint to allow for this claim would be futile. See *Lane*, 231 Mich App at 697.

## IV. TAKINGS CLAUSE

Next, plaintiffs assert that the trial court erred by granting summary disposition to defendants and denying plaintiffs' motion summary disposition relating to plaintiffs' takings claim. We disagree.

"The Fifth Amendment of the United States Constitution and Article 10 of the Michigan Constitution both prohibit the taking of private property for public use without just compensation." *Dorman v Twp of Clinton*, 269 Mich App 638, 645; 714 NW2d 350 (2006). "The term 'taking' can encompass governmental interference with rights to both tangible and intangible property." *AFT Mich v Michigan*, 497 Mich 197, 218; 866 NW2d 782 (2015). For example, a taking that requires compensation may occur when the government "asserts control over a discrete and identifiable fund of money, such as a deposit account." *Id*. However, "[t]his does not occur if the property in question is voluntarily relinquished to the government." *Id*.

Moreover, "[i]t is beyond dispute that [t]axes and user fees . . . are not takings." *Koontz v St Johns River Water Mgt Dist*, 570 US 595, 615; 133 S Ct 2586; 186 L Ed 2d 697 (2013) (quotation marks and citation omitted). To constitute a "user fee" for purposes of the Takings Clause, the fee must be a "fair approximation of the cost of benefits supplied." *United States v Sperry Corp*, 493 US 52, 60; 110 S Ct 387; 107 L Ed 2d 290 (1989) (quotation marks and citation omitted). However, there is no requirement that "a user fee must be precisely calibrated to the use that a party makes of Government services." *Id*. And the government is not required "to record invoices and billable hours to justify the cost of its services." *Id*.

In this case, as discussed earlier, the CFF is a valid user fee, conferring on cable customers the privilege of receiving cable services via public rights-of-way. The CFF is in line with cable industry rates, and plaintiffs cannot show that the fee is disproportionate. In terms of the WFF, as discussed, this is not a distinct charge paid by customers, rather the WMS transfers the WFF to the City's general fund to reimburse the City for services provided by the City's other departments. The fee customers pay for water utilities was not affected by the creation of the WFF, and plaintiffs have failed to address the proportionality of the overall fee consumers pay for water. Indeed, the evidence indicates that the City's water rates are competitive with, if not lower than, the rates in neighboring communities. By focusing solely on the WFF and failing to address the service fee customers actually pay for water services, plaintiffs have not shown that the fee paid by the customers is disproportionate to the services received, and they cannot show that their payment for water services is anything other than a valid user fee. Accordingly, their takings claim premised on the voluntary payment of user fees fails as a matter of law, and the trial court did not err by granting summary disposition to defendants.

## V. SUBSTANTIVE DUE PROCESS

Finally, plaintiffs argue that the trial court erred by granting summary disposition to defendants and denying plaintiffs' motion for summary disposition relating to plaintiffs' claim alleging a violation of substantive due process. We disagree.

"[B]oth the Fourteenth Amendment of the United States Constitution and Const. 1963, art. 1, § 17 guarantee that no state shall deprive any person of life, liberty or property, without due process of law." *Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239, 264; 792 NW2d 781 (2010). At issue in this case is substantive due-process which "protects against the arbitrary exercise of governmental power[.]" *Bonner v Brighton*, 495 Mich 209, 224; 848 NW2d 380 (2014). "In disputes over municipal actions, the focus is on whether there was egregious or arbitrary governmental conduct." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 197; 761 NW2d 293 (2008). Under this standard, to establish a substantive due-process violation, "the governmental conduct must be so arbitrary and capricious as to shock the conscience." *Cummins v Robinson Twp*, 283 Mich App 677, 701; 770 NW2d 421 (2009) (quotation marks and citation omitted). A plaintiff must show more than an ill-advised or incorrect governmental decision; "[t]hat is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Mettler Walloon, LLC*, 281 Mich App at 205 (quotation marks and citation omitted).

Here, plaintiffs argue that the City's imposition of the CFF and the WFF violate substantive due process. However, plaintiffs' argument is conclusory, and the exact nature of the property right at issue is frankly unclear from plaintiffs' briefing. See *Bonner*, 495 Mich at 226-227 ("Substantive due-process analysis must begin with a careful description of the asserted right.") (quotation marks and citation omitted). In any event, plaintiffs fail to identify a fundamental right, and they have not shown governmental conduct so arbitrary and capricious as to shock the conscience. As discussed, the City charges the CFF—at a rate comparable to industry standards—as a franchise fee and to reimburse the City for services provided to the WMS in relation to the provision of cable services. With regard to water, the WFF is not a specific fee paid by consumers; rather plaintiffs pay a fee for water services, and the WFF is a budget transfer that did not affect the rate consumers pay for water. Plaintiffs have not shown that the CFF and the amount paid for water services are disproportionate or anything other than valid user fees in exchange for the City's provision of valuable commodities. Further, plaintiffs have not shown that the user fees are not reasonably related to the City's legitimate interest in operating public utilities and maintaining the solvency of the City by ensuring that the City is reimbursed for its expenditures that benefit the WMS. Stated differently, there is nothing that shocks the conscience about charging reasonable user fees for municipal utilities, and plaintiffs' substantive due-process claim fails as a matter of law. See *Trantham v State Disbursement Unit*, 313 Mich App 157, 174; 882 NW2d 170 (2015), vacated in part on other grounds by 500 Mich 872 (2016) (holding that imposition of valid user fee did not violate substantive due process). Accordingly, the trial court did not err by granting summary disposition to defendants with regard to plaintiffs' substantive due-process claim.

Affirmed.  Defendants, as the prevailing parties may tax costs pursuant to MCR 7.219.


/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello